A. Y. LINVILLE *v.* C. F. NISSEN AND CARL NISSEN.

(Filed 26 April, 1913.)

1. Automobiles—Negligence Per Se—Liability of Owner.

An automobile is not inherently a dangerous machine so as to
render the owner liable for damages caused by the unauthorized
acts of another, by virtue of the fact that he is the owner.

2. Automobiles—Parent and Child—Master and Servant—Negligence
—Respondeat Superior.

A parent is not liable for the torts of his minor son done with-
out his knowledge and consent; and where under such circum-
stances the son has taken an automobile owned by his father,

LINVILLE *v.* NISSEN.

and by his negligent or reckless driving has caused damages, the father is not responsible therefor by reason of the relationship; and to make him so it must appear that the son was in some way acting in a representative capacity, such as would make the master responsible for the servant's tort.

### 3. Same—Scope of Employment.

To hold the master responsible for the tort of his servant it must be shown that the tort complained of occurred while the servant was acting within the scope of his duties and while in pursuance of them, and the driving of an automobile comes within this principle; and where it is shown that at times a father used the services of his son as a chauffeur, as in taking the family for a pleasure ride, etc., the tort of the son while taking a party of his friends to ride without the knowledge and against the commands of his father cannot be considered an act done for or in behalf of the latter, and as no negligence can therein be imputed to the father, he cannot be held liable, though he knew the son to be a reckless driver and had not locked up the automobile to prevent his having access to it.

APPEAL by defendants from *O. H. Allen, J.,* at September Term, 1912, of FORSYTH.

*Jones & Patterson, A. E. Holton, and H. O. Sapp for plaintiff.*

*Manly, Hendren & Womble and Watson, Buxton & Watson for defendants.*

CLARK, C. J. On Sunday afternoon 23 April, 1911, the plaintiff's son, a young man of 19, took three of his young friends to ride in his father's automobile, from his home in Waughtown, in the direction of High Point. On his return, about 5 miles from Waughtown, he passed the machine owned by the defendant C. F. Nissen, which was driven by his son, the other defendant, Carl Nissen, a young man of about 20, who also had taken three of his young friends out to ride that afternoon. The latter machine was standing still with its head pointed towards Kernersville, in the opposite direction from that in which the plaintiff's machine was going. Whether by invitation or not is in doubt, but soon afterwards Carl Nissen turned his machine around and started after the plaintiff's machine. At that time the plaintiff's machine was going about

25 miles an hour. As soon as the defendant's machine started to follow, a race began in which both machines proceeded at the rate of 40 miles or more. After racing some 3 miles, the driver of the foremost machine, Stokes Linville, perceived that the other machine was about to overtake him, and turned his machine to the right. The road was in good condition 10 feet in the center, being macadam and 10 feet on each side, being sand-clay road. Stokes Linville's evidence is that his machine went entirely off upon the dirt road to the right. The evidence for the other side is that it was partly on the dirt road and partly on the macadam. However that may be, there was room for the defendant's machine to pass, and for a short while they ran side by side; but as the defendant's machine was forging ahead its right hind wheel struck the left fore wheel of the plaintiff's machine, smashing it and throwing the latter machine upside down, injuring its occupants somewhat and damaging the machine. This action is against C. F. Nissen, the owner of the machine, who was not present, and Carl Nissen, the driver, for the injury to the plaintiff's machine.

The plaintiff's machine was a 1,500 pounds "Ford" and the defendant's was a 3,500 pounds "Cadillac" and capable of greater speed than the other. There was conflicting evidence as to how the injury occurred. The plaintiff contended that it was caused entirely by the negligence of Carl Nissen, the driver of the defendant's machine, and the defendants contended that it was caused by the negligence of the plaintiff, whose machine, they allege, swerved to the left as the defendant's machine was passing. This was a question of fact for the jury, who found that the defendant Carl Nissen was negligent and that the driver of the plaintiff's machine did not contribute to the negligence. There was evidence that the occupants of the rear car were drinking, eighteen empty beer bottles being found therein. This and the fact that the race was begun by defendant's car, which ran into the other, doubtless had weight with the jury.

Both parties were in violation of Laws 1907, ch. 728, which makes it a misdemeanor for any person to exceed 15 miles an hour with an automobile on the roads of Forsyth County, and

of the general law of the State, Laws 1909, ch. .445, sec. 9, which makes it a misdemeanor to operate an automobile at a greater speed than 25 miles an hour outside the towns and villages and .with slower speed allowed within municipal limits. A strict enforcement of this law would prevent such dangerous occurrences as this. It is to be presumed that the public prosecutor has done his duty, and that both these young men have answered for their violation of law at the bar of the criminal court. The public are entitled to this protection.

There were exceptions to evidence, but they do not merit serious consideration. There is no ground to consider seriously the exceptions as to Carl Nissen, whose negligence was a matter of fact to be determined by the jury, nor as to the measure of damages, which was fairly presented to the jury by the charge of the court and were assessed by the jury at $225.

The real controversy in the case is as to the liability of Charles F. Nissen, the owner of the machine, who was not present. He and his son both testified that his son took out the machine that Sunday afternoon not only without the consent of his father, but against his positive prohibition. There was evidence that C. F. Nissen had bought the machine for the use of himself and his family, and also for the collection of bills incident to his business, and that Carl at different times had acted as chauffeur, sometimes with his father and sometimes when his father was not present. There was also evidence offered to show the recklessness of Carl Nissen in that while driving the machine he had injured two buggies, and that his father had paid the damages. This was competent as tending to show that he was reckless and a careless driver, and that his father knew it. It was in evidence that when he had another machine the father on one occasion had taken off a wheel to keep Carl from using it, and that though he had forbidden his son to use this machine, he had not locked up the garage, on which there was no lock. It was argued, therefore, that as the son, as a member of the family, had an implied authority to use the machine, and that if forbidden to use the machine, his father being aware of his reckless and negligent driving, was

himself negligent in not locking it up to prevent his son taking it out, and hence was responsible for the consequent injury which occurred.

The principles of law involved are important and should be clearly stated. They may be thus summed up upon the authorities:

(1) The owner of an automobile is not liable for personal injuries caused by it, merely because of his ownership. "It is not *per se* a dangerous machine, requiring it to be placed in the same category with the locomotive, ferocious animals, dynamite, and other dangerous contrivances and agencies. The dangers incident to their use as motor vehicles are commonly the result of the negligent and reckless conduct of those in charge of and operating them, and do not inhere in the construction and use of the vehicles. It is well known that they are being devoted to and used for the purposes of traffic, and as conveyances for the pleasure and convenience of all classes of persons, and without menace to the safety of those using them or to others upon the same highway, when they are operated with reasonable care. The defendant cannot, therefore, be held liable upon the ground that the automobile is a dangerous contrivance." *Steffen v. McNaughton* (Wis.), 26 L. R. A., 382, which further states that this principle has been adopted in *Slater v. Thresher Co.,* 97 Minn., 305; *McIntyre v. Orner* (Ind.), 4 L. R. A. (N. S.), 1130; *Lewis v. Amarous,* 3 Ga. App., 50; *Jones v. Hoge* (Wash.), 14 L. R. A. (N. S.), 216; *Cunningham v. Castle,* 111 N. Y. Sup., 1057. There are many other cases to the same effect, among them, *Vincent v. Crandall,* 115 N. Y. Sup., 600; *Danforth v. Fisher,* 75 N. H., 3; *Freibaum v. Brady,* 143 App. Div. N. Y., 220.

(2) A parent is not liable for the torts of his minor son. "The relationship does not alone make a father answerable for the wrongful acts of his minor child. There must be something besides relationship to connect him with such acts before he becomes liable. It must be shown that he has approved such acts or that the child was his servant or agent." *Johnson v. Glidden,* 74 Am. St., 795, which cites a large number of cases. This

is quoted and approved in *Brittingham v. Stadiem,* 151 N. C., 300, this Court adding: "Wherever the principles of the common law prevail, this is a well-established doctrine."

We would not be understood, however, as holding that the father would not be liable if he should place his automobile in charge of a child of tender years any more than if he would intrust an unruly horse to him. But in such case the liability arises from the father's negligence, and not from the imputed negligence of the child. This is too well settled to need discussion. It is, however, contended that in this case the son was acting by the authority of the father, and therefore *quasi* his servant. Aside from the fact that the evidence of both the father and son is that he took the automobile out not only without his father's consent, but against his prohibition, the reason of the thing cannot sustain the proposition that the son was *pro hâc vice* acting as his father's agent. He did not take any of the family out to ride, but some of his friends, and was acting for his own purposes and not as agent for his father. In *Way v. Powers,* 57 Vt., 135, a son who was living as a hired man on his father's farm took his horse without his permission, though he would have given permission if asked, and drove to the railroad station for one of his friends. He there tied the horse, which broke loose and ran into the plaintiff's team and injured him. It was held that though the son was negligent, the father was not liable.

In *Reynolds v. Buck,* 127 Ia., 601, it was held that "the owner of an automobile is not liable from injury resulting from the negligent operation of the machine by a son, without the father's knowledge and consent, and not at the time in his employ or about his business." That case is exactly "on all-fours" with this.

In *Doran v. Thomsen,* 76 N. J., 754, where a father was possessed of an automobile which he kept upon his premises, and his daughter, about 19 years of age, was accustomed to drive it, and did so whenever she felt like it, asking permission to use it when the father was at home, but when not at home, taking it sometimes without permission, it was held that when she used the machine for her own pleasure and negligently injured a per-

son in the highway there was no proof sufficient to constitute
her the servant or agent of the master, and that her father was
not responsible.   This case is thoroughly discussed and cites
numerous authorities which sustain the proposition that "the
doctrine of *respondeat superior* applies only when the relation
of master and servant is shown to exist between the wrongdoer
and the person sought to be charged for the result of wrong, at
the time and in respect to the very transaction out of which the
injury arose."   It also cites numerous authorities to the other
well-settled principle that "the mere fact of the relation of
parent and child does not make the child the servant of the de-
fendant" in actions for tort.   That case well says that while
"liability might arise by reason of the father's intrusting a
dangerous machine or agency to the hands of an inexperienced
or incompetent person, such liability does not rest upon the
negligence of the servant in permitting his child to use a dan-
gerous machine."   In such case the ground of the action is the
negligence of the father and not the imputation of the negli-
gence of the servant to the master.   The distinction between
the two is well set out in 29 Cyc., 1665.   This latter was not
the case here, for there is no evidence that the father intrusted
the machine to the hands of his son or that he was inexperi-
enced, but the evidence on both points is to the contrary.

(3) Even if the son had been the servant of his father in
driving the machine, the father would not be liable for his neg-
ligence unless his son was at the time acting in the scope of his
employment and in regard to his master's business.   26 Cyc.,
1518; 20 A. and E., 167; 2 Thompson Neg., 855, 885, 886;
S. and R. Neg., 62, 63; Cooley on Torts, 533.   The authorities
applying this well-known principle to automobiles are already
numerous.   In *Riley v. Roach,* 168 Mich., 294, the Court held:
"A chauffeur employed by defendant was especially instructed
by him not to take the automobile out without permission. But
without his knowledge or consent, he did take the machine out,
and on the trip collided with the plaintiff's buggy: *Held,* this
was not in the scope of the chauffeur's employment, and the
owner was not liable."   Numerous authorities are cited to this
effect, which is a well-settled principle of general law.   This

case cited and distinguished *Moon v. Matthews* (Pa.), 29 L. R. A. (N. S.), 856, in that, in that case, the automobile having been taken out by the chauffeur in obedience to the command of the master's family for the entertainment of the friends and guests of the family, he was not acting outside the scope of his employment so as to relieve the master from liability for injury by the negligent handling of the car.

In this case the father had sold out his business a year before the accident, and had no chauffeur. But even if the son had been a regularly employed chauffeur, in *Jones v. Hoge,* 47 Wash., 663, it was held that "Where the chauffeur, without authority, took defendant's automobile from the garage without his knowledge or permission, and, while using it on a personal errand of his own, ran over plaintiff, the accident occurred while the chauffeur was acting beyond the scope of his master's business, and hence defendant was not liable." This case also is well considered and cites very numerous authorities to the same effect, some of which are cited in Huddy Automobiles, 95-98.

In *Stewart v. Baruch,* 103 App. Div. N. Y., 577, the Court said: "A chauffeur who in violation of the instructions of his employer takes out the latter's automobile for his own pleasure, is not, in so doing, acting in the scope of his employment, and his employer is not responsible to a stranger for his negligence." But this is so well settled as a general principle of the law that it scarcely needs discussion further than to say that repeated authorities, which are indeed uniform, hold that there is nothing in the nature of automobiles which excepts them from the application of this principle.

In *Durham v. Straus,* 38 Pa. Sup. Ct., 621, which was the case of a collision like the present, it was held that the chauffeur having taken the machine out contrary to the owner's general order not to do so without his consent, the owner was not responsible, the Court saying: "The plaintiff must not only show that the person in charge was defendant's servant, but the further fact that he was at the time engaged on the master's business. Evidence of the mere ownership of the machine is insufficient." To the same effect, *Sarver v. Mitchell,* 35 Pa.

Sup., 69, and numerous cases there cited. And *Danforth v. Fisher,* 75 N. H., 111, which held that the owner of an automobile was "not liable for injuries caused by the negligence of his servant in driving his machine, not in the scope of his master's employment, but for purposes of his own." This case cites numerous authorities.

In *McIntyre v. Hartfelder,* 9 Ga. App., 406, it was held that "The owner of an automobile is not usually liable for the injuries inflicted by one who at the time is driving it without his consent, contrary to his directions, even though he is an employee of the owner and had authority to drive it for certain purposes." In that case the chauffeur, instead of leaving the machine at the garage as he was told to do, used it to go to dinner, and inflicted the injury while in pursuit of that object.

Indeed, the rule is thus stated with full citation of authorities in *Slater v. Thresher Co.* (Minn.), 5 L. R. A. (N. S.), 601: "It is not controlling that the master intrust the servant with exclusive control of the instrumentality causing the injury. The test is, Was the servant acting in the scope of his employment at the time of the act complained of?" citing English and American authorities. It is true that the "employer is liable for damages caused by his employee's negligence while driving his automobile in the scope of his employment, though the negligent act was not necessary to the performance of his duties or especially authorized by or known to the employer, and was forbidden by him." *Winfrey v. Lazarus,* 128 S. W., 276 (Mo. App.). There is nothing that brings this case within this principle, but it is cited that there may be no misconception of the purport of this decision.

In *Stowe v. Morris* (Ky.), 144 S. W., 52, which is relied on by the plaintiff, the defendant had bought an automobile for the comfort and pleasure of his family, and the son was authorized to use it at any time for that purpose. He took it out for the purpose of giving his sister and himself and friends a pleasure ride. In that case it was held that the son was not performing an independent service of his own, but was discharging the business of the defendant and was acting as the servant of his father in the scope of his agency, and hence the

father was liable for the son's negligence in driving it. That case resembles *Moon v. Matthews* above cited, in which the machine was taken out by the authority of the sister of the owner, she being a member of the family. In both those cases the owner was held liable because the driver was acting within the scope of his authority. The facts of those cases in no wise resemble this.

In *Power v. Engineering Co.,* 142 App. Div. N. Y., 401, it was held that where an automobile owned by a corporation and used in its business was at the time of the accident driven and occupied by officers of the corporation and their friends on a pleasure trip, unconnected with the business of the corporation, the corporation was not liable for damages sustained by the negligence of the driver.

The general principle that "the master is not responsible for the tort of his servant when done without his authority and not for the purpose of executing his orders, or while doing the work, but wholly for the servant's own purposes and in pursuit of his private or personal ends," has been repeatedly held in our own Court and has very recently been restated in *Bucken v. R. R.,* 157 N. C., 443, and *Dover v. Manufacturing Co., ib.,* 325.

The court below erred in refusing to give prayers for instruction in accordance with the principles of law above laid down. Indeed, the judge might well have directed a nonsuit in respect to Charles F. Nissen, for the evidence is undisputed that the driver at the time of the injury to plaintiff's car was not engaged in any business for the owner, but was about his own business or pleasure, and no jury question was raised on that point.

As to appellant, Carl Nissen, there is no error. As to C. F. Nissen there is

Error.