L. P. TYREE, ADMINISTRATOR, v. GEORGE C. TUDOR ET AL.

(Filed 13 April, 1921.)

**1. Principal and Agent—Father and Son—Automobiles—Negligence of Son.**

Where the son of an owner of an automobile has his son to operate it as his chauffeur, both for business purposes and for the comfort and pleasure of his family, and there is evidence that he has given his permission for his son, just over sixteen years of age, to use it in escorting the plaintiff's intestate, a young girl of about the same age, to a dance, it is sufficient upon the question of the fact of the agency of the son that would bind the father for his negligence which proximately caused the death of the intestate when returning from the dance in the automobile.

**2. Same—Duty of Principal—Selection of Agent.**

Where the father has given permission to his son to use his automobile for the purpose of the son to escort a young girl to a dance, the son being slightly over sixteen, and there is evidence that the son usually acted as the chauffeur of his father for business and social purposes, it was the duty of the father not to entrust the safety of the young girl to his son unless he knew that he was careful and prudent in the operation of the machine, and he is responsible in damages for the death of the girl, proximately caused by his son's recklessness in driving the machine while acting as escort.

APPEAL by plaintiff from *Finley, J.,* at November Term, 1920, of FORSYTH.

The defendant, George C. Tudor, is the father of Bynum Tudor, who at the time the plaintiff's intestate was killed in the automobile wreck was something over sixteen years of age, "living at the home of his father and under his care, custody, and control." George C. Tudor was the owner of two automobiles, which he kept on his premises for business purposes and for the comfort and pleasure of his family—one a large Hudson touring car and the other a Buick 6 roadster. Bynum Tudor was the chauffeur for the family—drove both of the cars—some-

times driving out with his mother in the large car and at other times with his father in the small car, and at other times alone; sometimes driving alone in the large car, and at other times in the Buick 6 roadster.

On the night of 19 June, 1918, there was a dance for the young people at the Country Club, which was situated on a concrete road, about three miles west of Winston. Bynum Tudor invited Ruth Tyree, the plaintiff's intestate, a young girl nearly sixteen, to go in the car with him, and it is admitted in the pleadings that he procured the consent of his father to use the Buick 6 roadster for the purpose of taking her to the dance. There is evidence that he asked permission of his father to use the large car, but his father required him to take the small car. After the two young people arrived at the dance it is in evidence that he did not dance, but while the others were dancing he was driving his car on the concrete road extending from Winston to the Country Club, at a speed of 50 to 60 miles an hour, sometimes racing with other automobiles and sometimes with motorcycles.

The dance broke up about one o'clock a. m., and Bynum Tudor was among the last to leave the club. In this car, besides himself as chauffeur, was his older brother George, and Ruth Tyree. The evidence is that he drove at a speed of 50 to 60 miles an hour—with the sparks coming out of the Buick's manifold some seven or eight inches long, passing car after car on this crowded thoroughfare on his way to the city. In passing Martin Goodman's car at this speed he turned in too short and side-swiped the Goodman car. The impact of the light Buick 6 roadster with the heavier car of Goodman threw the Buick roadster out of the road, whirling it over and over through the barbwire fence into a field alongside the road, cutting down three posts, one of them six inches square, throwing the car 36 feet, leaving it upside down with its wheels in the air, and its front pointed in the opposite direction to that it was going. Bynum and his elder brother, who was in the car with them, were thrown out in a senseless condition, and the body of the young lady was found hanging on the strands of the barbwire fence in a condition so distressing and mangled that one of the men who attempted to move it fainted. Her practically lifeless body was rushed to the hospital, where she died almost immediately. Its condition was such that the authorities would not permit her parents to view it.

The road was 50 feet wide, 20 in the center being concrete and 15 feet on each side being dirt road. Goodman testified that he was driving on the right-hand side of the concrete in two feet of the edge, and that Tudor came up from behind without blowing any horn and struck his car, and at the time going probably 60 miles an hour. The distance to which Tudor's car was thrown is also some evidence of the great speed he was going. There was evidence that Tudor was in the habit of driving his father around town in his car.

At the close of the plaintiff's evidence, the court rendered a judgment of nonsuit, and the plaintiff appealed.

*Swink, Korner & Hutchins and Jones & Clement for plaintiff.*
*Manly, Hendren & Womble, Parrish & Deal, and Holton & Holton for defendant.*

CLARK, C. J. The plaintiff bases his cause of action upon the relation existing between George C. Tudor and his minor son as master and servant in two aspects:

1. That on this trip Bynum Tudor was acting as chauffeur under or with the consent and approval of George C. Tudor.

2. That where the parent maintains an automobile for social purposes by his family, he should be held liable for an injury sustained through its negligent operation while being used by a member of the owner's family, upon the theory that the car, under such circumstances, is being used for the purpose for which it was kept, and that the person—a member of the family—is operating it as the owner's agent. This includes cases where the parent keeping the automobile for the comfort and pleasure of his family, a member of the family who is authorized, expressly or impliedly, to use it for such purpose by his negligent operation of it causes an injury to another. This renders the owner liable.

This court has often held that the mere fact that the defendant, the owner of the car, was the father of Bynum Tudor does not make him liable in damages for his acts. *Linville v. Nissen,* 162 N. C., 95; *Bilyeu v. Beck,* 178 N. C., 481; but in *Linville v. Nissen, supra,* the father not only did not authorize, but expressly forbade, his son to use the machine, and in *Bilyeu v. Beck, supra,* the daughter acting as chauffeur was more than 21 years of age, and the evidence tended to show that she was acting solely for herself and not in any manner for her father or by his permission. In *Wilson v. Pope,* 175 N. C., 490, the evidence was that the owner was in the car at the time of the injury, and was going for her own purposes to her farm.

On the other hand, in *Clark v. Sweaney,* 175 N. C., 280; reaffirmed on rehearing, 176 N. C., 529, the minor son was driving the automobile with the implied consent of his father, who was therefore held liable for his negligence. This consent was implied by the fact that the automobile was purchased for the use of the family and the minor son was permitted to operate it as a member of the family and had his mother with him in the automobile and the father was held responsible. In the present case permission was expressly given to the son to use the car for a social purpose, and his invitation to the young lady to go with him was extended by the permission of his father to him to use the car for

that purpose. He also carried in the car his older brother, and was in the habit of driving his father in this car.

In *Brittingham v. Stadiem,* 151 N. C., 300, it was held that while the mere relationship of parent and child does not make the former liable for damages for the tort or negligent act of the other, the parent is liable when he authorized or permitted the child to do the act, or the child was acting as his servant or his agent. In that case the defendants employed their 12-year-old son as a clerk in a pawn shop, where, among other things, second-hand pistols were dealt in, and while the boy was carelessly handling a pistol on which a loan was asked, he unintentionally shot and injured another customer in the store, and it was held sufficient to submit the case to the jury upon the question of the parents' actionable negligence.

In *Taylor v. Stewart,* 172 N. C., 203, the Court held that it is negligence *per se* for one under the prohibited age (16) to run an automobile; still the father would not be liable unless the negligence of the minor son was the proximate cause of the injury, and that while ordinarily a father is not held responsible for the injury caused by the negligence of his minor son done without his knowledge and consent, such consent could be inferred in that case. In that case *Brown, J.,* says as follows: "A somewhat similar case has been decided in South Carolina, where it is held that where a person provided an automobile for the pleasure of his family, which his son was authorized by him to operate, he is responsible for his son's negligence when driving the car for the ·pleasure of himself and friends." *Davis v. Littlefield,* 97 S. C., 171.

On the second appeal, in *Taylor v. Stewart,* 175 N. C., 199, the verdict in favor of the father was sustained, there appearing evidence that "The death of plaintiff's intestate was an unavoidable accident, which a prudent chauffeur, authorized by law to run a machine, could not by exercising reasonable care, have avoided."

In the case at bar it is admitted in the answer that Bynum Tudor was acting as an escort for the plaintiff's intestate, taking her to and bringing her home from the dance, and that as a result of a collision the plaintiff's intestate received injuries from which she died, and it is also in evidence that the defendant, George C. Tudor, the day after the occurrence stated that his son Bynum had asked his permission to take his car to carry Ruth to the dance at the Country Club, and wanted his large car, but the father had another engagement that night and could not let his son have that car, but he did let them have his small car to take Ruth to the Country Club to the dance. There was ample evidence to go to the jury, if believed, that the negligence of Bynum was the proximate and indeed the sole cause of the injury.

Upon the evidence the plaintiff was driving the car by the permission of the father, knowing that it was to be used for the conveyance of the young lady to and from the dance, a social purpose. He was therefore operating the car as the servant of his father, and for the negligent injuries inflicted by him his father was responsible, it being within the scope and purposes for which the car was bought and used. There being evidence that the negligence of the son was the proximate cause of the death, the case should have been submitted to the jury.

In another recent case, *Reich v. Cone,* 180 N. C., 267, the owner of an automobile, who had loaned his machine to his servant to use solely for his own purposes, was held not liable in damages for the servant's negligence, because it appeared that the servant was competent to drive the car, and it was not being used by him in the employer's service. In the present case the car was being used for the social purposes of the family, and with the knowledge and consent of the father for that purpose, and there is no evidence that the minor son was competent to drive the car. Indeed, the evidence of his conduct that night, and in this very occurrence, tends to prove that he did not have sufficient discretion for that purpose, and his father is liable on that ground, also, if the jury should so find the fact. It was his duty not to entrust the safety of the young lady to his son unless he knew that he was careful and prudent in the operation of the machine. To hold otherwise would be dangerous to the safety of life and limb.

We will not lengthen this discussion by citations of numerous authorities from other states in which the decisions cannot all be reconciled or cases where the facts may more or less differ from the one at the bar.

Upon our own authorities, and upon the reason of the thing, we think this case should have been submitted to the jury, and the judgment of nonsuit is

Reversed.