CLARKSON, J., dissenting.
Two civil actions from alleged wrongful death resulting from the same accident, C. S., 160 and 161, consolidated for the purpose of trial only, and tried upon separate issues.
The intestates of plaintiff in each action, while together riding a bicycle on N. Brevard Street in the city of Charlotte, were stricken and *Page 586 
killed by an automobile on 21 August, 1936. Plaintiffs each allege wrongful death of intestate, respectively, resulting from actionable negligence of defendant Albert Grant, in the operation of the automobile which struck intestate, and that the automobile was owned by defendant Irving Kantor and, at the time, was being operated by defendant Albert Grant with the consent and permission, and as agent and servant of said Irving Kantor. Defendant Irving Kantor, answering for himself alone, denies the material allegations. Defendant Albert Grant has not filed answer.
Upon the trial below, in addition to issues as to negligence of defendant Albert Grant, and of damages, the court submitted this as the second issue in each case:
"II. If so, was Albert Grant, at the time of the alleged injury and death of the plaintiff's intestate, the agent and employee of the defendant Irving Kantor, and at said time acting within the scope of his employment?"
Bearing upon said second issue, several persons who stated that they were present in the criminal court at the trial of Albert Grant, were examined as witnesses for plaintiff. The following covers the scope of their testimony in this respect:
J. E. Martin, father of Agnes Lee Martin, testified: That he heard both Mr. Kantor and Albert Grant testify; that Mr. Kantor testified that "he got this boy, Albert Grant, to drive two passengers to Spartanburg to catch an airplane. It was . . . Mr. Kantor's car. . . . He said he told Albert Grant to bring the car back and park it at the rear of 115 1/2 S. Church Street, at the sporting goods place, and . . . to turn the key over to the man in charge . . ." On cross-examination the witness Martin further testified: "Spartanburg is about 72 miles south of Charlotte. . . . 115 1/2 S. Church Street is on the first block of Church Street south of Trade Street. My daughter was killed north of Charlotte, about 2 miles from the Square." Then, without objection by defendant Kantor, the witness further testified that Grant testified "that he went to North Charlotte to see his people, his family — mother and father. Grant's family lived up there. . . . I don't know whether he went out there before he went back or not. . . . My understanding was that Grant had went around by North Charlotte and was coming in. It wouldn't be necessary to go through North Charlotte to go to Spartanburg, but he could have. He had been to Spartanburg, but he was coming back in, as I understand. It would not have been necessary to come from Spartanburg by way of North Charlotte." Then, on redirect examination, the same witness testified without objection: "At the time he ran over the children he was coming in to put the car where he was instructed to put it, at the rear of that *Page 587 
sport goods places. . . . He testified that he was on the way to put the car behind the Sportland as he was instructed to do."
Mrs. W. C. Parrott, mother of Helen L. Parrott, deceased, testified that she heard Mr. Kantor testify that "it was his automobile. . . . He said he had Albert Grant to take two friends of his to Spartanburg, to catch a plane at that time, that Albert Grant was employed by him."
Mrs. W. W. Timmin, upon redirect examination, in answer to question — "Did you hear Grant state at the time he hit these children where he was going?" replied, "Well, he was going, he went to North Charlotte when he got back to town, I reckon." Then in answer to the question — "At the time he hit the children, which way was he going?" she replied: "He was going towards town. At the time he hit the children he was going to put the car behind the `Sport.' He was on his way to do that at the time he hit the children." Then on recross-examination she testified: "He (Grant) said he went to North Charlotte to see his people, and that he was on his way back from North Charlotte when he ran over those children."
C. A. Parrott testified that "Albert Grant said he was coming to put the car up where he told him to leave it, behind the Sportland." On cross-examination this witness was asked: Q. But he said he had already taken the passengers down to Spartanburg and came back, didn't he? A. No reply. Q. Did he say that. A. He said he had taken them to Spartanburg, yes. Q. Well, he had to get back from Spartanburg, didn't he, before he could go up to North Charlotte? A. Yes, sir."
The jury answered the issues as to negligence and the second issue, "Yes," and assessed damages. From adverse judgment thereon, defendant Irving Kantor appeals to Supreme Court and assigns error.
The appellant stresses for error these assignments:
1. The refusal of the court below to grant (a) his motion for judgment as of nonsuit made in apt time as required by statute, C. S., 567, and (b) his request for peremptory instruction for negative answer to the second issue.
2. If there be no error in the ruling in either of those respects, the refusal of the court to give this special instruction requested in apt time: "If you find from the evidence and its greater weight that the defendant, Albert Grant, was instructed by his codefendant, Irving Kantor, to take two passengers from the city of Charlotte to the airport in Spartanburg, South Carolina, and return the car to the city of Charlotte and park same in the vacant lot at No. 115 1/2 South Church Street, and you *Page 588 
should further find that the said Grant, after taking the persons to Spartanburg, returned to Charlotte, and instead of parking the car at the designated point, went on his own mission to North Charlotte for the purpose of visiting his family and ran over and killed plaintiff's intestate on his way back to the city of Charlotte, you will answer the second issue `No,' and even though you should find from the evidence and the greater weight that he was on his way at the time of the injury and subsequent death of plaintiff's intestate to park the said car at the said designated point, it will be your duty and the court so charges you to answer the second issue `No.'"
Upon the evidence disclosed in the record we are of opinion and hold that the court properly ruled with respect to both the motion for judgment as of nonsuit and the request for peremptory instruction, but that there is error in the refusal to give the quoted special instruction as requested.
The underlying question raised by these assignments is whether the servant, Grant, was acting within the scope of his employment by the defendant, Kantor, at the time of the injuries resulting in the death of intestates.
The owner of an automobile is not liable for personal injuries caused by it merely because of its ownership. Linville v. Nissen, 162 N.C. 95,77 S.E. 1096; Martin v. Bus Line, 197 N.C. 720, 150 S.E. 501. The liability, if any, of the owner of an automobile operated by another rests solely upon the doctrine of respondeat superior. Leary v. Bank,215 N.C. 501, 2 S.E.2d 570. This doctrine applies only when the relation of master and servant is shown "to exist between the wrongdoer and the person sought to be charged for the result of the wrong at the time and in respect to the very transaction out of which the injury arose." Linvillev. Nissen, supra; Martin v. Bus Line, supra; Liverman v. Cline,212 N.C. 43, 192 S.E. 849.
The rule is well established that the master is responsible for the negligence of his servant which results in injury to a third person when the servant is acting in the scope of his employment or about the master's business.
The rule is also well settled that the master is not responsible for the tort of his servant when done without his authority and not for the purpose of executing his orders, or while doing his work, but wholly for the servant's own purposes and in pursuit of his private or personal ends.Dover v. Mfg. Co., 157 N.C. 324, 72 S.E. 1067; Bucken v. R. R.,157 N.C. 443, 73 S.E. 137.
A servant is acting in the course of his employment, when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment *Page 589 
if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility, but, if there is a total departure from the course of the master's business, the master is not answerable for the servant's conduct." Tiffany on Agency, p. 270; Robertsonv. Power Co., 204 N.C. 359, 168 S.E. 415.
With respect to departure from employment, without consent of owner, "the general rule is that a servant in charge of his master's automobile, who, though originally bound upon a mission for his master, completely forsakes his employment and goes upon an errand exclusively his own, and while so engaged commits a tort, does not thereby render the master answerable for such tort under the rule of respondeat superior." 5 Blashfield's Cyc. of Automobile Law and Practice, section 3029.
The question of owner's liability for injury by automobile while being used by a servant for his own pleasure or purpose has been the subject of decisions by courts of many jurisdictions. These decisions are by no means harmonious under varying circumstances. See Annotations, 22 A.L.R., 1404; 45 A.L.R., 482; 68 A.L.R., 1055; 80 A.L.R., 727; 122 A.L.R., 863. The trend of judicial decisions, however, is that the departure commences when the servant definitely deviates from the course or place where in the performance of his duty he should be. While there is conflict of authority on the subject, better reason supports the view that after a servant has deviated from his employment, for purposes of his own, the relation of master and servant is not restored until he returns to the path of duty, where the deviation occurred, or to some place, where in the performance of his duty, he should be.
Blashfield, in section 3051, Vol. 5, page 212, speaking with respect to returning from deviation, says: "The majority rule, and probably the better view, is that the relation of master and servant is not restored until he has return to the place where the deviation occurred, or to a corresponding place, some place where in the performance of his duty he should be," citing decisions of courts in many states. In Humphrey v. Hogan, 104 S.W.2d 767, the Supreme Court of Missouri says that the weight of authority is well stated in this section. See, also, Annotations, 22 A.L.R., 1414; 45 A.L.R., 487; 68 A.L.R., 1056; 80 A.L.R., 728.
In Graves v. Utica Candy Co., 209 A.D. 193, 204 N.Y. S., 682, it was held that when the driver returned from his regular trip and went down the street on which his employer's place of business was located and got to a point where he could have driven into his employer's garage, but failed to do so, from that moment he abandoned his employer's service, and his trip twenty-six miles north of his employer's place of business and his return trip, occurred after he had abandoned his duty *Page 590 
to his employer, were wholly without his scope of employment, and the employer was not liable for injuries arising out of the accident, notwithstanding the fact that at the time of the accident the driver was on his way back to his employer's garage.
In Virginia Ice Freezing Co. v. Coffin, 166 Va. 154, 184 S.E. 214, the Court said: "Of course a servant is not required to return by air line from an errand performed, nor must be adopt the shortest practicable route. A detour in reason does not change his status, but an abrupt and unmistakable departure for some purpose of his own does." In this case where a truck driver had been instructed to make a delivery and return to his employer's factory and on his return trip had reached a point three or four blocks distant from the plant when he started to a point thirty-five blocks away in order to pay a personal bill, an accident occurring after he had proceeded about twenty blocks on such journey, the Court held that the relation of master and servant was suspended.
In Dairy Products Co. v. Defrates, 125 S.W.2d 282, 122 A.L.R., 854, the Texas Court said: "The test of liability is whether he was engaged in his master's business and not whether he purposed to resume it. It is equally true that Henderson owned the duty to his master of returning the car and resuming his employment and, while returning to the zone of his employment, he was discharging that duty, but that fact does not fix liability against the master. It was Henderson's own wrong in driving away that created the duty to return, and in returning he was but undoing that wrong. The return was referable to, and an incident of the departure. He was no more engaged in his master's business while returning to, than while departing from his path of duty."
Upon the evidence presented on this record we cannot hold as a matter of law that the driver of the automobile was at the time of the accident completely without the scope of his employment. The evidence is susceptible of the inference that in returning from Spartanburg the driver of the automobile had the choice of ways, one of which might reasonably take him by the home of his father and mother in going to the place where he was directed to park the automobile. The evidence is also susceptible of the view that in returning from Spartanburg the driver of the automobile came within the zone of the terminus of his employment, that is, in the vicinity of the place where he was directed to park the car, and that he then, for purposes of his own, drove the automobile two miles in the northern direction to the home of his father and mother, and that at the time of the accident he was returning from this, his personal mission. If the jury should accept the latter view, then the moment that the driver turned aside from his duty to drive the automobile to the place where he was directed to park, he departed from his *Page 591 
employment and remained outside of it until he returned to the point of departure. Until he reached that point, he was only returning to his employment.
The decision in Martin v. Bus Line, supra, in the light of similarity of facts, tends to support these principles.
We are not unmindful of what is said in Lazarus v. Grocery Co.,201 N.C. 817, 161 S.E. 553, with respect to deviation by the driver from his master's business. Affirmance there of the judgment below was specifically based on the authority of Jeffrey v. Mfg. Co., 197 N.C. 724,150 S.E. 503. We find upon adverting to the record in the Lazarus case,supra, that there was judgment of nonsuit on the trial in the general county court of Buncombe County. The Superior Court, in its appellate capacity, being of opinion that there was sufficient evidence to take the case to the jury, reversed the judgment of nonsuit. Then, on appeal to this Court while defendant presented as the questions involved its contention that the servant had completely departed from the scope of his employment and was engaged on his own business and for his personal ends, the plaintiff made two contentions: (1) That there was sufficient evidence to make out aprima facie case for the plaintiff under decision in the Jeffreys case,supra; and (2) that, conceding that the servant had deviated from his employment, he was at the time returning to his employment. With respect to the first contention, the plaintiffs in their brief undertook to array in parallel the evidence in the instant case and the evidence in the Jeffreyscase, supra. This Court agreed with plaintiff's first contention, saying: "The evidence should, therefore, have been submitted to the jury." Then the Court stated that the evidence offered by defendant did not show such a deviation by the driver of the truck from defendant's business as relieved it from liability to plaintiff as a matter of law under the principle ofrespondeat superior. The statement which follows to the effect that although the driver of the truck had deviated from the route over which he was directed by defendant to drive, he was returning to this route at the time of injury to plaintiff by his negligence, was not necessary to the decisions, and must be considered an incidental remark.
For reasons indicated there will be a
New trial.