J. E. SMITH v. DUKE UNIVERSITY, a CORPORATION.

(Filed 21 May, 1941.)

1. **Trial § 24—**

While the evidence must be considered in the light most favorable to plaintiff upon motion to nonsuit, plaintiff is required to offer evidence which reasonably tends to prove each fact essential to make out his case, and evidence which raises a mere conjecture or suspicion is insufficient.

2. **Hospitals § 3—**

In order to hold a hospital liable under the doctrine of *respondeat superior* for negligence of a physician, plaintiff must show that the physician was an employee or agent of the hospital and that the physician, at the time of and in respect to the very treatment complained of, was acting as such within the scope of his employment.

3. **Same—**

When a person goes to a hospital for treatment, and expresses no preference for a physician, and the hospital assigns a physician from its staff who is engaged in the private practice of medicine and does not treat the

patient as an agent of the hospital, the hospital cannot be held liable for unskillful or negligent treatment of the patient by the physician unless it failed to exercise reasonable care in his selection.

**4. Same—Evidence held insufficient to show that physician was agent of hospital or that hospital failed to exercise due care in his selection.**

This action was instituted to recover of a hospital for alleged negligent or unskillful treatment of a patient by a physician. The physician was not made a party to the action. The evidence tended to show that plaintiff brought his wife to defendant hospital as a pay patient and that, neither plaintiff nor his wife having expressed preference for any particular physician, a reputable physician was assigned from the hospital staff. The evidence further tended to show that the physician was employed as a professor by the hospital in its school of medicine and that under the terms of his employment he was permitted to engage in the private practice of medicine and was given an office in the hospital as part compensation for his teaching and free ward work, and that he was paid for teaching and for free ward and dispensary work by the hospital, but that fees collected by him for private practice, although collected in some instances by the hospital as an accommodation, were his own, and that the hospital received no part thereof. *Held:* The evidence is insufficient to show that the physician in treating plaintiff's wife was acting as an agent or employee of the hospital or that the hospital held him out as such or subsequently ratified his treatment as an act of its agent or employee, and there being no evidence that the hospital failed to exercise reasonable care in selecting the physician, its motion to nonsuit was properly allowed.

**5. Appeal and Error § 41—When it is determined that nonsuit was properly granted on one ground, other grounds advanced to sustain the nonsuit need not be considered.**

Where, in an action against a hospital to recover for alleged negligence of a physician under the doctrine of *respondeat superior*, it is determined that defendant hospital's motion for judgment as of nonsuit was properly allowed for failure of evidence that the physician in treating the patient was acting as an agent or employee of the hospital, whether the evidence was sufficient to show actionable negligence in his treatment of the patient, or whether the nonsuit should have been allowed on the ground that defendant was, and is, an eleemosynary institution, and thus exempt from liability for negligence on the part of its agents and employees when due care has been exercised in their selection, need not be determined,

**6. Trial § 22c—**

A nonsuit cannot be sustained upon an affirmative defense unless plaintiff's own evidence establishes such defense as a matter of law.

APPEAL by plaintiff from *Williams, J.,* at September Term, 1940, of FRANKLIN. Affirmed.

This was an action to recover damages for an injury alleged to have been caused by the negligent treatment of plaintiff's wife in the hospital which is operated by the defendant Duke University. An action by Naomi Smith, wife of plaintiff, against the defendant for the same cause, was by consent consolidated for trial with the above entitled case.

At the conclusion of the evidence defendant's motion for judgment of nonsuit was allowed, and from judgment accordingly plaintiff appealed.

*Yarborough & Yarborough, E. F. Griffin, and Royall, Gosney & Smith for plaintiff, appellant.*

*Jones & Brassfield, W. L. Lumpkin, R. L. Savage, T. D. Bryson, and E. C. Bryson for defendant, appellee.*

DEVIN, J. The determination of the correctness of the nonsuit below necessitates consideration of the primary question whether plaintiff offered sufficient evidence to show that the physician and surgeon, whose treatment of the plaintiff's wife is complained of, was at the time acting within the scope of his agency or employment by the defendant so as to impose liability upon it under the principle of *respondeat superior,* and, if so, whether there was evidence of actionable negligence on the part of the physician sufficient to require submission of the case to the jury.

While the consideration of a motion for judgment of nonsuit requires that the evidence be viewed in the light most favorable for the plaintiff, it is the established rule that there must be legal evidence of the fact in issue, and not merely such as raises a conjecture or suggests a possibility. The plaintiff is required to offer evidence which reasonably tends to prove the facts essential to the maintenance of his case. *Byrd v. Express Co.,* 139 N. C., 273, 51 S. E., 851; *Mills v. Moore, ante,* 25.

Examining the record of the testimony in accord with these cardinal principles, we find the evidence tends to show that in the fall of 1935, plaintiff's wife, following child-birth, was suffering from profuse uterine hemorrhage, and that on 31 October, 1935, by the advice of her local physician, plaintiff took her from their home in Franklin County to Duke Hospital for treatment and operation. On arrival he explained her trouble to the person in charge of the admitting office of the hospital. Neither plaintiff nor his wife knew any physician or surgeon and expressed no preference for any particular physician. Owing to the nature of her malady she was assigned to Dr. Bayard Carter, who is a specialist in obstetrics and gynecology, and she was taken to his office, which is located in Duke Hospital. It appeared that Dr. Carter, a duly licensed physician, was Professor of Obstetrics and Gynecology in the School of Medicine of Duke University, and was a member of the committee having to do with the relation of the Medical School to clinical medicine. It also appeared that under the terms of his employment by Duke University he was permitted to engage, and did engage, in the private practice of medicine and was permitted to maintain an office in Duke Hospital. Dr. Carter, after his examination of Mrs. Smith, decided that, owing to her physical condition and the fact that she was a large, fleshy woman

with high blood pressure, a surgical operation was not advisable, and, finding indications suggestive of cancer, advised radium treatment as proper for controlling the hemorrhage and as preventive of cancer. Plaintiff was told by "someone down there" (not Dr. Carter) that the charge for the room would be $3.50 per day, and that the cost of the operation would be $35.00. The written consent of Mrs. Smith for the treatment prescribed and for the operation of curettement having been given, the operation was performed and the radium treatment administered 2 November, and on 7 November she went home. On 25 November she returned to the hospital for post-operation check, and again 1 December. At that time there was no bleeding, but a profuse discharge. She returned to the hospital 5 January, 1936, when diabetic conditions appeared. She was there again 11 February. Dr. Carter, also, at plaintiff's request, went to Louisburg to see her in May, 1936, at which time he told plaintiff there would be no charge for the visit. At all times Dr. Carter was the treating physician. Following the discovery of the diabetic condition of his wife, plaintiff followed the directions given him by Dr. Carter, and kept records and reported her reaction to treatment. All correspondence relative to her case was between plaintiff or members of his family and Dr. Carter. Mrs. Smith was again in the hospital in the fall of 1937 for further treatment by Dr. Carter for vesico vaginal fistula which resulted from the first operation.

Plaintiff's evidence tended to show that following the initial treatment Mrs. Smith suffered great pain, and that later both rectal and vaginal fistulas appeared, accompanied by impairment of the functions of the bladder and offensive discharges, and that her mind became weakened and her physical health seriously injured. It also appeared that since her treatment at defendant's hospital she has been at times under care of different local physicians and was treated at hospitals in Rocky Mount and Raleigh.

Plaintiff offered the testimony of three physicians, who had examined Mrs. Smith after her treatment at Duke Hospital, which tended to show that her condition indicated "marked radium reaction" or radium burns, and that the injuries complained of were attributable to radium reaction. There was further evidence by the medical witnesses, without objection, that if radium had been properly used the kind and extent of radium reaction observed in her case would not have resulted; that the ordinary dose of radium for carcinoma of the uterus was 5,000 milligram hours, that is the number of milligrams of radium multiplied by the number of hours of exposure to the affected tissues. The method of confining the emanations from radium to the Beta and Gamma rays was explained. It was testified that the amount of radium to be used would depend to some extent on the patient and the condition to be treated. "A mistake

in the quantity used and the length of time it is left in may produce disastrous results if precautions are not used."

There was evidence also that in human beings there are different degrees of susceptibility to the effects of radium—that is, its effects are more pronounced in some than others—and that there are individuals who are supersensitive or allergic to its effects, and that there was no way of determining this beforehand. And it was also brought out that a person suffering with diabetes is more susceptible to unfavorable reaction from radium treatment, and that, as it takes some six months for radium treatment to become effective, if a few months after operation a person developed diabetes, the reaction would be increased and might result in consequences deleterious to the patient which could not have been anticipated. There was other evidence, however, tending to negative the inference that Mrs. Smith had had diabetes, or that true diabetes developed subsequently.

Plaintiff offered the deposition of the Superintendent of Duke Hospital for the purpose of showing its method of operation, and the relationship between the hospital and physicians who treat patients therein. From this testimony it appears that the amounts collected by the hospital from patients do not include the fees for the services of physicians. The hospital gets no part of that. The charges for pay patients are made, collected and pocketed by the individual practitioners. Duke University in the operation of Duke Hospital employs physicians who are paid for teaching, for free ward work, and for free dispensary work, but their private fees are not touched. Their charges (not made by the hospital) represent a wide range of fluctuations, in the main scaled upon the ability of the patient to pay. Sometimes physicians' charges are collected as a courtesy and accommodation by the office, but no responsibility is assumed. Occasionally the patient's weekly statement for room and board will also show the amount due for medical or surgical services. The doctors employ on their own account a business organization which does the work of collecting from the patient the bill for their services, but that is separate from the hospital organization. With respect to pediatrical or medical patients, this doctors' organization is headed by Mr. Cobb. If they happen to be surgical, obstetrical or gynecological patients, the matter is handled by Mr. Roper, or one of the members of his organization. They are separate organizations and have no connection with the hospital. When a patient is carried to the hospital he invariably gets the physician he asks for. If he has no knowledge sufficient to make a choice, he is assigned to one whose specialty happens to coincide more nearly with the patient's condition. The assigning is done by a young woman who is paid from three sources; on the one hand, by the medical and pediatrical organization; on the other, by the surgical,

obstetrical and gynecological organization, and third, by the hospital organization. "Her role is that of referee or impartial differentiate." The doctors' private organization, or private diagnostic clinic, is operated within the confines of Duke Hospital with some of the hospital's facilities and some of theirs. The hospital has nothing to do with this organization. The doctors are charged for the use of the hospital's facilities.

In order to maintain his action against Duke University, it was incumbent upon the plaintiff to show that Dr. Carter, by whom or under whose care the alleged negligent treatment of his wife was administered, was an employee or agent of the University, and to go further and show that Dr. Carter was, at the time and in respect to the treatment complained of, acting as such within the scope of his employment. *Dover v. Mfg. Co.,* 157 N. C., 324, 72 S. E., 1067; *Bucken v. R. R.,* 157 N. C., 443, 73 S. E., 137; *Gurley v. Power Co.,* 172 N. C., 690, 90 S. E., 943; *Gallop v. Clark,* 188 N. C., 186, 124 S. E., 145; *Martin v. Bus Line,* 197 N. C., 720, 150 S. E., 501; *Cole v. Funeral Co.,* 207 N. C., 271, 176 S. E., 553; *Parrott v. Kantor,* 216 N. C., 584, 6 S. E. (2d), 40; *Creech v. Linen Supply Co., ante,* 457. "Where one person is sought to be charged with the negligence or wrongdoing of another, the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person so sought to be charged, at the time and in respect to the very transaction out of which the injury arose. The fact that the former was at the time in the general employment and pay of the latter, does not necessarily make the latter chargeable." *Wyllie v. Palmer,* 137 N. Y., 248. This accurate statement of the law was quoted with approval in *Linville v. Nissen,* 162 N. C., 95, 77 S. E., 1096; *Van Landingham v. Sewing Machine Co.,* 207 N. C., 355, 177 S. E., 126; *Liverman v. Cline,* 212 N. C., 43, 192 S. E., 849; *Bright v. Telegraph Co.,* 213 N. C., 208, 195 S. E., 391; *Robinson v. Sears, Roebuck & Co.,* 216 N. C., 322, 4 S. E. (2d), 889; *Creech v. Linen Supply Co., ante,* 457.

It is well settled that an employer is not liable if the negligence of the employee which causes the injury occurs while the employee is acting outside the legitimate scope of his employment and is then engaged in some private matter of his own. *McLamb v. Beasley,* 218 N. C., 308, 11 S. E. (2d), 283; *Tribble v. Swinson,* 213 N. C., 550, 196 S. E., 820; *Van Landingham v. Sewing Machine Co., supra; Bowditch v. French Broad Hospital,* 201 N. C., 168, 159 S. E., 350.

Evidence that Dr. Carter was employed as Professor of Obstetrics and Gynecology in the Medical School of Duke University, and that his employment included "free ward work" in the treatment of charity patients in the hospital, and that he was a member of the professional staff of the hospital as a physician and surgeon, was not alone sufficient to show that

in the treatment of Mrs. Smith he was, at the time and in respect to the particular treatment given her, acting within the scope of his employment by the defendant University, as distinguished from his private and individual practice, for which he was paid by the patient. He was not employed by the defendant to treat pay patients in the hospital, or any others except those in the free ward, and received no compensation from the defendant therefor. *Penland v. Hospital,* 199 N. C., 314, 154 S. E., 406; *Barfield v. South Highland Infirmary,* 191 Ala., 553. Nor can the fact that Dr. Carter was furnished an office in the hospital, which he used as part compensation for teaching and for free ward work, be held sufficient to show that he was the agent of the defendant in treating the plaintiff's wife. The evidence indicates that in treating her he was exercising independent and individual professional skill and judgment. *Johnson v. Hospital,* 196 N. C., 610, 146 S. E., 573; *Black v. Fischer,* 30 Ga. App., 109, 117 S. E., 103.

The rule may fairly be deduced from the decisions of this Court that when a person goes to a hospital for treatment for a particular malady, and expresses no preference as to the physician by whom he is to be treated, and is there directed to or assigned to a reputable physician, one who is not in that respect an employee of the hospital and who is apparently qualified to treat such malady, it is the duty of those in charge of the hospital to exercise reasonable care in the selection of the physician, and that without proof of negligence in this respect no liability attaches to the hospital for injury due to negligence or unskillful treatment of the patient by the physician. *Penland v. Hospital, supra; Johnson v. Hospital, supra; Gosnell v. R. R.,* 202 N. C., 234, 162 S. E., 569. Ordinarily, the hospital undertakes only to furnish room, food, facilities for operation, and attendance, and is not liable for damages resulting from the negligence of a physician in the absence of evidence of agency, or other facts upon which the principle of *respondeat superior* can be applied. *Martin v. Hospital,* 195 Ill. App., 388.

The case of *Pangle v. Appalachian Hall,* 190 N. C., 833, 131 S. E., 42, cited by plaintiff, is not in point. The statement of the legal duty resting on private hospitals with respect to the treatment of patients was made in that case with reference to physicians and attendants employed to treat patients in the hospital.

The doctrine of *respondeat superior* does not apply to a physician who acts upon his own initiative, and in the exercise of his own judgment and skill, without direction or control of an employer, *Norton v. Hefner,* 132 Ark., 18; and if there is negligence in the treatment of a patient on the part of a physician who is not the servant or employee of the hospital, and who is pursuing an independent calling, the responsibility is not that of the hospital, and there is no distinction in that respect between a

visiting and a resident physician. *Schloendorff v. New York Hospital,* 211 N. Y., 125.

The rationale of the general rule which exempts employers from liability for the negligence of a physician is stated in 19 L. R. A., 1183, to be that physicians are not the servants of their employers but are professional men who "exercise their profession to the best of their abilities according to their own discretion; but in exercising it they are in no way under his (the employer's) orders or bound to obey his directions." This statement of the law is quoted in the recent case of *Woodburn v. Standard Forgings Corp.,* 112 F. (2d), 271, 129 A. L. R., 337.

In *Stewart Circle Hospital Corp. v. Curry,* 173 Va., 136, 3 S. E. (2d), 153, it was said: "It is conceded that a hospital is not responsible for the acts of an attending physician, whether a member of its staff or an outsider, except where by contract it has assumed responsibility. This is based on the ground that such physician is an independent contractor and alone is responsible for the exercise of professional skill and judgment, subject to no control by the hospital in the execution thereof." See, also, cases cited in the annotation in 124 A. L. R., 190.

There was no evidence that Dr. Carter in treating Mrs. Smith assumed to act for Duke University otherwise than in his individual capacity as a practicing physician, or that Dr. Carter was held out by the defendant as having been employed by it to treat pay patients, or that the hospital undertook to furnish physicians and surgeons for the treatment of the maladies of patients, and hence no liability can attach to defendant on the theory that Dr. Carter was acting within the scope of an apparent authority or employment. Nor is there evidence of subsequent ratification by defendant University of any action on the part of Dr. Carter beyond the limits of his employment. 2 Am. Jur., 82, 166.

Dr. Carter, personally, has not been sued. He is not a party to the action. Since we are of opinion that the evidence was insufficient to show that in the treatment of plaintiff's wife he was acting within the scope of his employment by Duke University, it becomes unnecessary to determine whether the evidence was sufficient to show actionable negligence on his part, under the rule laid down in *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356; *Ferguson v. Glenn,* 201 N. C., 128, 159 S. E., 5; and *Davis v. Pittman,* 212 N. C., 680, 194 S. E., 97, or whether the fact of the radium burns and the injurious consequences therefrom were sufficient to afford evidence that they were caused by negligent treatment (*Covington v. James,* 214 N. C., 71, 197 S. E., 563; *Butler v. Lupton,* 216 N. C., 653, 6 S. E. [2d], 523), or were due to the diabetic condition, or to hyper-sensitiveness on the part of the patient (*Lippard v. Johnson,* 215 N. C., 384, 1 S. E. [2d], 889; *Runyan v. Goodrum,* 147 Ark., 481; *Sweeney v. Erving,* 228 U. S., 233), or whether the matter was left in

the field of speculation or conjecture (*Smith v. McClung,* 201 N. C., 648, 161 S. E., 91; *Kuchneman v. Boyd,* 193 Wis., 588).

One of the questions provoking debate here was whether the nonsuit should have been allowed on the ground that the defendant was and is an eleemosynary institution, and thus exempt from liability for negligence on the part of its agents and employees when due care had been exercised in their selection. We need not determine this question as we hold, upon another ground, that the nonsuit was properly allowed. It may be said, however, that judgment of nonsuit cannot be sustained upon evidence tending to support an affirmative defense, unless the plaintiff's own evidence establishes such defense as a matter of law. *Hedgecock v. Ins. Co.,* 212 N. C., 638, 194 S. E., 86.

For the reasons stated, the ruling of the court below in allowing the motion for nonsuit and entering judgment dismissing the action is

Affirmed.