MRS. ANNIE W. PARROTT, ADMINISTRATRIX OF THE ESTATE OF HELEN L. PARROTT, DECEASED, v. IRVING KANTOR AND ALBERT GRANT,

and

J. E. MARTIN, ADMINISTRATOR OF THE ESTATE OF AGNES LEE MARTIN, DECEASED, v. IRVING KANTOR AND ALBERT GRANT.

(Filed 13 December, 1939.)

**1. Automobiles § 23—**

The owner of an automobile is not liable for its negligent operation by another merely by reason of ownership, but the owner may be held liable under the doctrine of *respondeat superior* only if the relationship of master and servant exists between him and the driver at the time of, and in respect to, the very transaction resulting in injury.

**2. Master and Servant § 21b—Master is liable for torts committed by his servant while acting in course of his employment.**

A servant is acting within the course of his employment so as to render his master liable for his torts under the doctrine of *respondeat superior* if, at the time, the servant is engaged in the performance of duties he is employed to perform and is acting in furtherance of his master's business,

and while every deviation from the strict execution of his duty will not relieve the master of liability, the master cannot be held liable for torts committed by the servant while acting without authority and not in the performance of his duties, but wholly in pursuit of his private and personal ends.

3. **Same: Automobiles § 24b—Master is not liable for tort committed by servant while returning to employment after complete departure therefrom.**

A servant driving his master's automobile in the course of his employment is not required to take the most direct practical route, and the relationship is not interrupted by a detour in reason, but when the servant makes a complete departure from the course of his employment in deviating from his route solely for his personal ends, the relationship is not reestablished until he returns to the place where the deviation occurred, or to some place where he should be in the performance of his duty, and the master is not liable for the servant's negligent operation of the automobile while on his way back to resume his duties after such complete departure.

4. **Same—Held: Court correctly denied nonsuit on issue of master's liability, but should have given requested instruction that master would not be liable if servant was returning to duties after complete departure.**

The evidence tended to show that defendant employer instructed his employee to transport some passengers to another city, and to return and park the car at a designated spot, that the employee, after returning to the city, went by his parents' home in the northern part of the city for his own purposes, and that the accident in suit occurred after he had left his parents' home and was returning the car to the designated parking place. There was evidence supporting the inference that in returning to the city the employee had a choice of ways, one of which might reasonably take him by his parents' home, and evidence that in returning to the city he came within the vicinity where he was directed to park the car, and that then he deviated for his own purposes in going by his parents' home. *Held:* The evidence is sufficient to be submitted to the jury on the issue of the employer's liability, and defendant employer's motion to nonsuit and motion for a directed verdict on the issue was properly denied, but the failure of the court to give instructions requested by the employer to the effect that he would not be liable if the employee completely departed from his employment for personal reasons, and if the accident occurred while he was returning to the place where he left the course of his employment, is reversible error.

CLARKSON, J., dissenting.

APPEAL by defendant Irving Kantor from *Gwyn, J.,* at May Civil Term, 1939, of MECKLENBURG.

Two civil actions from alleged wrongful death resulting from the same accident, C. S., 160 and 161, consolidated for the purpose of trial only, and tried upon separate issues.

The intestates of plaintiff in each action, while together riding a bicycle on N. Brevard Street in the city of Charlotte, were stricken and

killed by an automobile on 21 August, 1936. Plaintiffs each allege wrongful death of intestate, respectively, resulting from actionable negligence of defendant Albert Grant, in the operation of the automobile which struck intestates, and that the automobile was owned by defendant Irving Kantor and, at the time, was being operated by defendant Albert Grant with the consent and permission, and as agent and servant of said Irving Kantor. Defendant Irving Kantor, answering for himself alone, denies the material allegations. Defendant Albert Grant has not filed answer.

Upon the trial below, in addition to issues as to negligence of defendant Albert Grant, and of damages, the court submitted this as the second issue in each case:

"II. If so, was Albert Grant, at the time of the alleged injury and death of the plaintiff's intestate, the agent and employee of the defendant Irving Kantor, and at said time acting within the scope of his employment?"

Bearing upon said second issue, several persons who stated that they were present in the criminal court at the trial of Albert Grant, were examined as witnesses for plaintiff. The following covers the scope of their testimony in this respect:

J. E. Martin, father of Agnes Lee Martin, testified: That he heard both Mr. Kantor and Albert Grant testify; that Mr. Kantor testified that "he got this boy, Albert Grant, to drive two passengers to Spartanburg to catch an airplane. It was . . . Mr. Kantor's car. . . . He said he told Albert Grant to bring the car back and park it at the rear of 115½ S. Church Street, at the sporting goods place, and . . . to turn the key over to the man in charge . . ." On cross-examination the witness Martin further testified: "Spartanburg is about 72 miles south of Charlotte. . . . 115½ S. Church Street is on the first block of Church Street south of Trade Street. My daughter was killed north of Charlotte, about 2 miles from the Square." Then, without objection by defendant Kantor, the witness further testified that Grant testified "that he went to North Charlotte to see his people, his family—mother and father. Grant's family lived up there. . . . I don't know whether he went out there before he went back or not. . . . My understanding was that Grant had went around by North Charlotte and was coming in. It wouldn't be necessary to go through North Charlotte to go to Spartanburg, but he could have. He had been to Spartanburg, but he was coming back in, as I understand. It would not have been necessary to come from Spartanburg by way of North Charlotte." Then, on redirect examination, the same witness testified without objection: "At the time he ran over the children he was coming in to put the car where he was instructed to put it, at the rear of that

sport goods place. . . . He testified that he was on the way to put the car behind the Sportland as he was instructed to do."

Mrs. W. C. Parrott, mother of Helen L. Parrott, deceased, testified that she heard Mr. Kantor testify that "it was his automobile. . . . He said he had Albert Grant to take two friends of his to Spartanburg, to catch a plane at that time, that Albert Grant was employed by him."

Mrs. W. W. Timmin, upon redirect examination, in answer to question—"Did you hear Grant state at the time he hit these children where he was going?" replied, "Well, he was going, he went to North Charlotte when he got back to town, I reckon." Then in answer to the question—"At the time he hit the children, which way was he going?" she replied: "He was going towards town. At the time he hit the children he was going to put the car behind the 'Sport.' He was on his way to do that at the time he hit the children." Then on recross-examination she testified: "He (Grant) said he went to North Charlotte to see his people, and that he was on his way back from North Charlotte when he ran over those children."

C. A. Parrott testified that "Albert Grant said he was coming to put the car up where he told him to leave it, behind the Sportland." On cross-examination this witness was asked: Q. But he said he had already taken the passengers down to Spartanburg and came back, didn't he? A. No reply. Q. Did he say that. A. He said he had taken them to Spartanburg, yes. Q. Well, he had to get back from Spartanburg, didn't he, before he could go up to North Charlotte? A. Yes, sir."

The jury answered the issues as to negligence and the second issue, "Yes," and assessed damages. From adverse judgments thereon, defendant Irving Kantor appeals to Supreme Court and assigns error.

*G. T. Carswell and Joe W. Ervin for plaintiffs, appellees.*
*W. C. Davis for defendant, appellant, Kantor.*

WINBORNE, J. The appellant stresses for error these assignments:

1. The refusal of the court below to grant (a) his motion for judgment as of nonsuit made in apt time as required by statute, C. S., 567, and (b) his request for peremptory instruction for negative answer to the second issue.

2. If there be no error in the ruling in either of those respects, the refusal of the court to give this special instruction requested in apt time: "If you find from the evidence and its greater weight that the defendant, Albert Grant, was instructed by his codefendant, Irving Kantor, to take two passengers from the city of Charlotte to the airport in Spartanburg, South Carolina, and return the car to the city of Charlotte and park same in the vacant lot at No. 115½ South Church Street, and you

PARROTT *v.* KANTOR and MARTIN *v.* KANTOR.

should further find that the said Grant, after taking the persons to Spartanburg, returned to Charlotte, and instead of parking the car at the designated point, went on his own mission to North Charlotte for the purpose of visiting his family and ran over and killed plaintiff's intestate on his way back to the city of Charlotte, you will answer the second issue 'No,' and even though you should find from the evidence and the greater weight that he was on his way at the time of the injury and subsequent death of plaintiff's intestate to park the said car at the said designated point, it will be your duty and the court so charges you to answer the second issue 'No.' "

Upon the evidence disclosed in the record we are of opinion and hold that the court properly ruled with respect to both the motion for judgment as of nonsuit and the request for peremptory instruction, but that there is error in the refusal to give the quoted special instruction as requested.

The underlying question raised by these assignments is whether the servant, Grant, was acting within the scope of his employment by the defendant, Kantor, at the time of the injuries resulting in the death of intestates.

The owner of an automobile is not liable for personal injuries caused by it merely because of its ownership. *Linville v. Nissen,* 162 N. C., 95, 77 S. E., 1096; *Martin v. Bus Line,* 197 N. C., 720, 150 S. E., 501. The liability, if any, of the owner of an automobile operated by another rests solely upon the doctrine of *respondeat superior. Leary v. Bank,* 215 N. C., 501, 2 S. E. (2d), 570. This doctrine applies only when the relation of master and servant is shown "to exist between the wrongdoer and the person sought to be charged for the result of the wrong at the time and in respect to the very transaction out of which the injury arose." *Linville v. Nissen, supra; Martin v. Bus Line, supra; Liverman v. Cline,* 212 N. C., 43, 192 S. E., 849.

The rule is well established that the master is responsible for the negligence of his servant which results in injury to a third person when the servant is acting in the scope of his employment or about the master's business.

The rule is also well settled that the master is not responsible for the tort of his servant when done without his authority and not for the purpose of executing his orders, or while doing his work, but wholly for the servant's own purposes and in pursuit of his private or personal ends. *Dover v. Mfg. Co.,* 157 N. C., 324, 72 S. E., 1067; *Bucken v. R. R.,* 157 N. C., 443, 73 S. E., 137.

A servant is acting in the course of his employment, when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment

if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility, but, if there is a total departure from the course of the master's business, the master is not answerable for the servant's conduct." Tiffany on Agency, p. 270; *Robertson v. Power Co.*, 204 N. C., 359, 168 S. E., 415.

With respect to departure from employment, without consent of owner, "the general rule is that a servant in charge of his master's automobile, who, though originally bound upon a mission for his master, completely forsakes his employment and goes upon an errand exclusively his own, and while so engaged commits a tort, does not thereby render the master answerable for such tort under the rule of *respondeat superior."* 5 Blashfield's Cyc. of Automobile Law and Practice, section 3029.

The question of owner's liability for injury by automobile while being used by a servant for his own pleasure or purpose has been the subject of decisions by courts of many jurisdictions. These decisions are by no means harmonious under varying circumstances. See Annotations, 22 A. L. R., 1404; 45 A. L. R., 482; 68 A. L. R., 1055; 80 A. L. R., 727; 122 A. L. R., 863. The trend of judicial decisions, however, is that the departure commences when the servant definitely deviates from the course or place where in the performance of his duty he should be. While there is conflict of authority on the subject, better reason supports the view that after a servant has deviated from his employment, for purposes of his own, the relation of master and servant is not restored until he returns to the path of duty, where the deviation occurred, or to some place, where in the performance of his duty, he should be.

Blashfield, in section 3051, Vol. 5, page 212, speaking with respect to returning from deviation, says: "The majority rule, and probably the better view, is that the relation of master and servant is not restored until he has return to the place where the deviation occurred, or to a corresponding place, some place where in the performance of his duty he should be," citing decisions of courts in many states. In *Humphrey v. Hogan,* 104 S. W. (2d), 767, the Supreme Court of Missouri says that the weight of authority is well stated in this section. See, also, Annotations, 22 A. L. R., 1414; 45 A. L. R., 487; 68 A. L. R., 1056; 80 A. L. R., 728.

In *Graves v. Utica Candy Co.,* 209 App. Div., 193, 204 N. Y. S., 682, it was held that when the driver returned from his regular trip and went down the street on which his employer's place of business was located and got to a point where he could have driven into his employer's garage, but failed to do so, from that moment he abandoned his employer's service, and his trip twenty-six miles north of his employer's place of business and his return trip, occurred after he had abandoned his duty

to his employer, were wholly without his scope of employment, and the employer was not liable for injuries arising out of the accident, notwithstanding the fact that at the time of the accident the driver was on his way back to his employer's garage.

In *Virginia Ice & Freezing Co. v. Coffin,* 166 Va., 154, 184 S. E., 214, the Court said: "Of course a servant is not required to return by air line from an errand performed, nor must he adopt the shortest practicable route. A detour in reason does not change his status, but an abrupt and unmistakable departure for some purpose of his own does." In this case where a truck driver had been instructed to make a delivery and return to his employer's factory and on his return trip had reached a point three or four blocks distant from the plant when he started to a point thirty-five blocks away in order to pay a personal bill, an accident occurring after he had proceeded about twenty blocks on such journey, the Court held that the relation of master and servant was suspended.

In *Dairy Products Co. v. Defrates,* 125 S. W. (2d), 282, 122 A. L. R., 854, the Texas Court said: "The test of liability is whether he was engaged in his master's business and not whether he purposed to resume it. It is equally true that Henderson owed the duty to his master of returning the car and resuming his employment and, while returning to the zone of his employment, he was discharging that duty, but that fact does not fix liability against the master. It was Henderson's own wrong in driving away that created the duty to return, and in returning he was but undoing that wrong. The return was referable to, and an incident of the departure. He was no more engaged in his master's business while returning to, than while departing from his path of duty."

Upon the evidence presented on this record we cannot hold as a matter of law that the driver of the automobile was at the time of the accident completely without the scope of his employment. The evidence is susceptible of the inference that in returning from Spartanburg the driver of the automobile had the choice of ways, one of which might reasonably take him by the home of his father and mother in going to the place where he was directed to park the automobile. The evidence is also susceptible of the view that in returning from Spartanburg the driver of the automobile came within the zone of the terminus of his employment, that is, in the vicinity of the place where he was directed to park the car, and that he then, for purposes of his own, drove the automobile two miles in the northern direction to the home of his father and mother, and that at the time of the accident he was returning from this, his personal mission. If the jury should accept the latter view, then the moment that the driver turned aside from his duty to drive the automobile to the place where he was directed to park, he departed from his

employment and remained outside of it until he returned to the point of departure. Until he reached that point, he was only returning to his employment.

The decision in *Martin v. Bus Line, supra,* in the light of similarity of facts, tends to support these principles.

We are not unmindful of what is said in *Lazarus v. Grocery Co.,* 201 N. C., 817, 161 S. E., 553, with respect to deviation by the driver from his master's business. Affirmance there of the judgment below was specifically based on the authority of *Jeffrey v. Mfg. Co.,* 197 N. C., 724, 150 S. E., 503. We find upon adverting to the record in the *Lazarus case, supra,* that there was judgment of nonsuit on the trial in the general county court of Buncombe County. The Superior Court, in its appellate capacity, being of opinion that there was sufficient evidence to take the case to the jury, reversed the judgment of nonsuit. Then, on appeal to this Court while defendant presented as the questions involved its contention that the servant had completely departed from the scope of his employment and was engaged on his own business and for his personal ends, the plaintiff made two contentions: (1) That there was sufficient evidence to make out a *prima facie* case for the plaintiff under decision in the *Jeffreys case, supra;* and (2) that, conceding that the servant had deviated from his employment, he was at the time returning to his employment. With respect to the first contention, the plaintiffs in their brief undertook to array in parallel the evidence in the instant case and the evidence in the *Jeffreys case, supra.* This Court agreed with plaintiff's first contention, saying: "The evidence should, therefore, have been submitted to the jury." Then the Court stated that the evidence offered by defendant did not show such a deviation by the driver of the truck from defendant's business as relieved it from liability to plaintiff as a matter of law under the principle of *respondeat superior.* The statement which follows to the effect that although the driver of the truck had deviated from the route over which he was directed by defendant to drive, he was returning to this route at the time of injury to plaintiff by his negligence, was not necessary to the decision, and must be considered an incidental remark.

For reasons indicated there will be a

New trial.

CLARKSON, J., dissenting: I am unable to agree with the result reached by the majority.

In the entire record—in the pleadings, admission of evidence, issues, instructions of the judge, the verdict, and the judgment—this Court has been unable to find positive error; only a negative error of omission rather than one of commission (a failure to give a requested special

instruction) has been pointed out as reversible error. "Verdicts and judgments are not to be set aside for harmless error or for mere error and no more. To accomplish this result, it must appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, amounting to the denial of some substantial right. *In re Ross,* 182 N. C., 477; *Burris v. Lilaker,* 181 N. C., 376." *Wilson v. Lumber Co.,* 186 N. C., 56 (57), quoted with approval in *Collins v. Lamb,* 215 N. C., 719 (720). This Court is without power to review the facts found properly by a jury (*Wheeler v. Gibbon,* 126 N. C., 811), unless there has been (1) an error of law (2) prejudicial to the appealing party, the judgment should be affirmed.

The pertinent portion of the instruction, which is quoted in full in the majority opinion, was to the effect that if the jury found that Grant "returned to Charlotte, and instead of parking the car at the designated point, went on his own mission . . . and ran over and killed plaintiffs' intestates on his way back to the city of Charlotte, . . . even though . . . he was on his way at the time of the injury . . . to park the said car at the said designated point," it would be the jury's duty to free defendant Kantor of liability. Since it is not denied that. Grant had returned to Charlotte and was returning from a visit to his. family when plaintiffs' intestates were killed, such an instruction would have eliminated the jury's consideration of plaintiffs' theory of liability. The trial judge, realizing this, in my opinion correctly refused to give this instruction. An analysis of the trial theories of the prosecution and defense demonstrates the correctness of the trial judge's ruling.

Plaintiffs insisted upon the correctness of two legal propositions, under either of which they would be entitled to recover: (1) That if Grant. returned to Charlotte by turning aside from the most direct route to the designated parking place and did so for the purpose of visiting his. family, the relationship of master and servant continued undisturbed until after plaintiffs' intestates were injured; (2) that even if Grant. "returned to Charlotte and instead of parking the car at the designated point, went on his own mission . . . and ran over and killed plaintiffs' intestates . . . on his way back . . . to park said car," the master-servant relationship, though broken by his departure on a mission of his own, was restored when he resumed his trip for the purpose of returning the car to the proper parking point. There is considerable authority to support both theories of plaintiffs. The first of these theories is not directly challenged here nor discussed by the majority opinion. It is because the granting of the special instruction approved by the majority would remove from the jury's consideration this primary theory of plaintiffs' case that I feel compelled to dissent. The majority view in the instant. case rejects the second of plaintiffs''

theories, thus sharply modifying if not entirely abandoning the earlier
North Carolina rule. (See *Duncan v. Overton,* 182 N. C., 80, at p. 82,
and *Lazarus v. Grocery Co.,* 201 N. C., 817; 5 Blashfield, Cyclopedia of
Automobile Law and Practice, section 3052, n. 13; 7-8 Huddy, Cyclo-
pedia of Automobile Law, section 96, n, 94, both Blashfield and Huddy
citing the *Lazarus case, supra,* as settling the North Carolina rule con-
trary to the majority opinion in the instant case. See, also, *Jeffrey v.
Mfg. Co.,* 197 N. C., 724.) Although I have some misgivings concern-
ing the extent to which the instant majority opinion weakens, and brands
as *dicta,* that portion of the *Lazarus case, supra,* to the effect that the
master-servant relationship exists while a driver who has deviated from
a direct route is returning to that route, I prefer to rest my dissent
largely upon the much stronger ground that, in view of plaintiffs' trial
theories, the granting of the special instruction requested would have
been reversible error.

The judge, in charging the jury, stated: "The plaintiffs in each in-
stance say and contend that, prior to the injury and death, he (Grant)
had never taken the car back to the place to which he was directed to
take it, but that he had returned to Charlotte and while in Charlotte and
on a byway, on his return, he stopped to see some of his people in North
Charlotte, and that, having seen his people, he was returning by way of
Brevard Street to the place called 'Sportland,' and that it was on his
return to 'Sportland' to leave the car . . .; · that he was engaged in
the performance of the thing that he was employed to do; that he was
carrying the car to 'Sportland'; that he had not taken the car to 'Sport-
land' prior to that time; that there were a number of streets and avenues
by which to approach the place called 'Sportland' in the city; that in
completing the job which he was given to complete, the plaintiffs con-
tend and say that he was not only the agent of defendant, Irving Kantor,
but that at the time he was acting within the scope of his employment
and in the completion of work entrusted to him to do." The trial judge
likewise charged, "Now, if the plaintiffs, in each instance, have satisfied
you, by the greater weight of the evidence, that Irving Kantor employed
Albert Grant to drive his automobile to Spartanburg, South Carolina,
to take passengers and to return the car and place it at 'Sportland' and
deliver the key to some person; that he carried the passengers to Spar-
tanburg and returned with the car, and that upon his return he stopped
by the home of some of his people in North Charlotte; that he left
North Charlotte and was driving along Brevard Street toward the place
called 'Sportland,' and that, so returning, he was engaged in the perform-
ance of what he was employed to do, and that such method of return
could fairly and reasonably be deemed a proper means of performing the
work or duties entrusted to him, then, the court charges you, that it

would be your duty to answer the second issue 'Yes,' in such instance, or in both cases, if the plaintiffs, in both cases, have so satisfied you, by the greater weight of the evidence."

These two excerpts from the charge were excepted to by defendant and argued in the brief of defendant. It is submitted that they were correct and that the propositions of law involved therein were without error. This likewise appears to be the majority view, as the majority opinion not only does not point out error in these portions of the charge, but specifically declares that the trial judge was correct in refusing to give a peremptory instruction to the effect that Grant, at the time of injury to · plaintiffs' intestates, was not acting within the scope of employment as servant of Kantor. Permitting the jury to consider the matters referred to in the above excerpts from the charge would have been inconsistent with the granting of the special instruction which the majority view approves, for the reason that the special instruction is, in effect, a peremptory instruction to find against plaintiffs on plaintiffs' primary theory, to wit, that Grant, after returning to Charlotte, never so far deviated from the scope of his employment as to terminate the master-servant relationship. In my opinion, the trial judge was correct in refusing to give both the peremptory instruction as to the second issue and the special instruction which was practically equivalent to a peremptory instruction against the plaintiffs. In my opinion, the trial judge correctly submitted to the jury both the plaintiffs' and the defendant's theories, the plaintiffs' theory being that Grant's deviation from his duty as Kantor's servant was so incidental that the master-servant relationship was not disturbed (*Duncan v. Overton, supra*), and the defendant's theory being that Grant's deviation from instructions was sufficient to constitute an independent mission of his own completely outside the scope of his employment and, as such, insulated defendant against liability (*Martin v. Bus Line,* 197 N. C., 720).

In addition to the North Carolina authorities cited above in support of plaintiffs' position, the text authorities generally are to the same effect. "A mere deviation from the directed route, or the direct and usual route, does not constitute *per se* an abandonment of the master's business, so as to relieve the master from liability for the negligence of the servant in driving. The fact that the deviation is made for a purely personal reason does not necessarily change this rule. Whether the extent of his departure from the area of his service was so unreasonable as to make of his act of deviation an independent journey of his own rather than a mere detour, or one incidental to his employment, is a question of degree, and ordinarily one of fact, unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure instead

PARROTT *v.* KANTOR and MARTIN *v.* KANTOR.

of a deviation still incidental to his employment." 5 Blashfield, Cyclopedia of Automobile Law and Practice, s. 3030. "A mere disregard of instructions and slight deviation from the line of the chauffeur's duty, does not necessarily amount to a departure from employment, nor relieve the master from responsibility for his negligence, even though the route selected is not the shortest possible one." 7-8 Huddy, Cyclopedia of Automobile Law, 9th Ed., s. 95. "To relieve the employer from liability, the deviation must be so substantial as to amount to a departure from the service, and must be for purposes entirely personal to the employee. . . . 'In cases where the deviation is slight, and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury.'" 4 Berry, Automobiles, 7th Ed., pp. 620-621. To the same effect is Michie, The Law of Automobiles, N. C. Ed., s. 132. "A slight deviation, even on his own business, while on an errand for the master, will not render the chauffeur any the less the agent of the master, especially where the master's implied consent could be inferred." Babbitt, Motor Vehicle Law, 4th Ed., s. 1281. To the same general effect as the authorities cited above are 42 C. J., pp. 1110-1111, and 5 Am. Jur., pp. 714-715.

To summarize, the authority in support of the submission of plaintiffs' theory that Grant's deviation from employment did not destroy the master-servant relationship is ample and is impliedly approved by the majority opinion; hence, it would have been error, in my opinion, to have given the special instructions which the majority opinion approve. All of the evidence indicated that Grant returned to Charlotte and, before parking the car as he had been instructed, visited his family; hence, to have charged the jury that if it found that Grant returned to Charlotte and instead of parking the car went on a mission of his own, the jury must answer the second issue "No," would have been a peremptory instruction to find against the plaintiff. If the majority view is correct in stating that plaintiff made out a case for the jury, I am unable to perceive how a peremptory instruction to find against plaintiff can be approved. The case was, it seems to me, clearly one for the jury. The jury has passed upon the issues of fact and found for the plaintiffs; accordingly, in my opinion, the judgment should be affirmed.