Myrtle V. STIVERS, Appellant,

v.

**GEORGE WASHINGTON UNIVERSITY** et al., Appellees.

No. 16999.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 4, 1963.

Decided June 13, 1963.

Mr. Albert J. Ahern, Jr., Washington, D. C., for appellant.

Mr. Walter J. Murphy, Jr., Washington, D. C., with whom Messrs. H. Mason Welch, J. Harry Welch, J. Joseph Barse and James A. Welch, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant brought suit in the District Court against George Washington University Hospital and Dr. John W. Barrett, one of its medical staff employees, under claims which she characterizes in her brief as for malpractice and negligence. The complaint also asserted that appellant's consent to a diagnostic operation known as a bi-lateral arteriogram was based on inadequate information and hence was not binding. The jury returned a verdict in favor of Dr. Barrett but found a verdict of $7500 as against the Hospital. The District Court thereafter granted the Hospital's motion for judgment in its favor notwithstanding the verdict.

The case is now before us on an appeal from the judgment n. o. v.; appellant did not appeal from the jury verdict favorable to Dr. Barrett. The Hospital cross appealed from denial of its motion for a new trial, in order to preserve its claim that a new trial should be granted if the action of the District Court is reversed.

In 1959 appellant visited the out-patient services of the Cancer Clinic of the Hospital complaining of chronic headaches, dizzy spells, nausea and a breast lump. She was told there was no evidence of cancer and was advised to visit the Neurology Clinic of the Hospital. There she was examined by Drs. Swain and Barrett, and her history was noted. The existence of a brain tumor was suspected and appellant was advised after consultation that a bi-lateral arteriogram was recommended. Dr. Barrett explained that an arteriogram was an operation which involved injecting a fluid (Hypaque 50% solution) in to an artery in the neck, that this fluid dye would enter the bloodstream and go into the brain where it could be photographed by x-ray. She was told that this would be done under a general anesthetic and that "there was really nothing to it." It is admitted that appellant was not informed of possible side effects which might flow from such an operation.

Following the conversation with Dr. Barrett in circumstances from which a jury could reasonably infer that she acted in reliance on this conversation, appellant signed a hospital form consenting to the operation; the form was entitled "Authorization for Administration of anesthesia, and for performance of operation and other procedures."[1]

The arteriogram was performed by Dr. Barrett at the hospital under the supervision of Dr. Swain and following the procedure she was unable to speak clearly and had a temporary paralysis of the extremities. While these effects were not

---

[1] The text included a statement: "I hereby consent to the performance upon myself, Myrtle Stivers, of an arteriogram. I further consent to the performance of such additional operations and procedures as are considered necessary or desired in the judgment of my surgeon and his associates. I consent to the administration of such anesthesia as may be considered necessary or desirable in the judgment of the surgeon and anesthesiologist of the above-named hospital. * * * I certify that I fully understand the above consent; that the explanations therein referred to were made; that all blanks and statements requiring insertions or completion were filled in; inapplicable paragraphs, if any, were stricken before I signed the signature above Myrtle V. Stivers."

of a permanent nature, appellant claims she now has less manual dexterity than is required for her occupation as a clerk-typist.

The District Court eliminated the issues raised by alternative theories of appellant's case and submitted only the issue of whether an informed consent was given. The District Court instructed the jury that it could bring in a verdict for the appellant if it found that her action in executing the hospital form was not an informed consent. See Note 1. The jury was also charged that the doctor was under duty to disclose to the patient the type of information which a reasonable medical practitioner would disclose to his patient under the circumstances shown by the evidence and that the doctor was not liable if information was withheld because of his professional evaluation of "the patient's best therapeutic interest."

As we have already noted the jury returned a verdict for appellant against the hospital but exonerated Dr. Barrett, the hospital's agent and the District Court then set aside the verdict against the hospital and entered judgment in its favor notwithstanding the verdict.

Appellant agrees that the informed consent issue was properly submitted to the jury but contends (a) that there was an implied warranty arising out of Dr. Barrett's statements and conduct, (b) that failure to confine the use of Hypaque solution to the use outlined in the labelling in effect at the time was a departure from the standard of care required. It is also urged that it was error to grant the judgment n. o. v. in view of failure of adequate disclosure by appellee's agents.

We find no support for the claim of an implied warranty and the claim of departure from accepted standards of medical practice is not supported, as it must be, by evidence on that issue delineating the alleged correct procedure.

On the contrary the evidence is that the procedure followed complied with accepted practice. While the consent to the operation was obtained in writing by a lay employee it seems clear he was performing only a ministerial or administrative function to implement the consultation between appellant and Dr. Barrett; a lay person would not be competent to describe the procedure or discuss the possible consequences. The patient was entitled to rely on Dr. Barrett and the evidence is such that a jury could reasonably find she did so.

The issue on appeal with respect to the informed consent is narrowed to essentially what the District Judge had to resolve in granting judgment n. o. v., i. e., does the evidence *against the Hospital* fail, as a matter of law, to sustain a claim for relief? We are compelled to view this claim against the background of two other factors: (a) that the verdict constitutes a jury finding that Dr. Barrett was not guilty of withholding relevant information from appellant or in the alternative that he violated no duty owed her in telling her what he did tell her or withholding what he did not tell her; (b) that appellant has not sought review of the jury verdict favorable to Dr. Barrett and no issue relating to Dr. Barrett on this point is now before us.

The Hospital can be liable in tort only derivatively by virtue of the acts or omissions of its servants. Therefore, the two verdicts returned by the jury were inconsistent and incompatible on their face because the Hospital could not be liable if its servant was not.[2] In view of the unusual procedural posture of this case, i. e., no appeal from the judgment in favor of the servant Dr. Barrett, we are bound by the jury's determination that Dr. Barrett is not liable to appellant. Cf. Lansburgh & Bro. v. Clark, 75 U.S. App.D.C. 339, 341, 127 F.2d 331, 333 (1942). Our examination of the record reveals no evidence upon which the jury

---

**2.** The Hospital does not argue that there was no master-servant relationship between itself and Dr. Barrett.

could hold the Hospital liable independent of the conduct of Dr. Barrett, therefore, the judgment in favor of the Hospital must be

Affirmed.