**Roy C. HAVEN, Jr., et al., Plaintiffs,**

v.

**Judson G. RANDOLPH, M.D., et al., Defendants.**

**Civ. A. No. 1930-66.**

United States District Court, District of Columbia, Civil Division.

May 18, 1972.

Melvin Belli, San Francisco, Cal., Leonard J. Keilp, Washington, D. C., for plaintiffs.

Wm. D. Maddux, Chicago, Ill., for Judson Randolph, M. D.

Frank J. Martell, Washington, D. C., for Allan Coleman, M. D.

Denver H. Graham, Washington, D. C., for the Children's Hospital.

FLANNERY, District Judge.

■ This case involves a claim of medical malpractice filed by minor plaintiff through his mother against the child's pediatrician, the operating surgeon and Children's Hospital. The matter now comes before the court on motions for directed verdicts proffered by each of the three defendants. Before ruling on these motions the court states for the record that it now modifies its previous rulings in regard to plaintiffs' Exhibits 33(a) through (g) in which it excluded from evidence all brochures and medicine package inserts proffered by plaintiffs, as being irrelevant. The court now admits into evidence that part of plaintiffs' Exhibit entitled "Retrograde Aortography." This Exhibit will be admitted into evidence over the various objections of the defendants previously noted and will be identified as plaintiffs' Exhibit 33(f) (1). Thus, the court has considered this document as well as other oral and physical evidence in reaching its decision. Moreover, although the remaining brochures and medicine package inserts are not formally in evidence, because counsel for plaintiffs has referred to them extensively in his argument and cross-examination, the court has considered these documents as well.

■ At the outset, the court notes that in considering the merits of a motion for a directed verdict the court must view the evidence in the light most favorable to the plaintiffs. Seganish v. District of Columbia Safeway Stores, Inc., 132 U.S.App.D.C. 117, 406 F.2d 653 (1968); Lord v. Lencshire House, Ltd., 106 U.S.App.D.C. 328, 272 F.2d 557 (1960). However, where the evidence presented by the plaintiffs is so weak that to submit it to a jury would be to allow them to speculate as to a defendant's negligence, a defense motion made at the conclusion of the plaintiffs' evidence should be granted. Law v. Vir-

ginia Stage Lines, Inc., 144 U.S.App.D. C. 115, 444 F.2d 990 (1971).

Plaintiffs allege two instances of negligence. First, plaintiffs assert that defendants were negligent in the performance of the testing operation, and second, plaintiffs assert that defendants were negligent in not fully advising the parents of the minor plaintiff of all of the possible dangers involved in the proposed medical procedures, before the parents gave their consent for the operation i. e., the so-called "doctrine of informed consent". The court quotes from plaintiffs' pretrial statement:

### COUNT I—NEGLIGENCE

Defendant Randolph was negligent in his treatment of the minor plaintiff:

1. In performing a retrograde femoral arteriogram on said child when the same was not necessary in light of the child's physical condition and/or when the risks of such procedure greatly outweighed the benefits expected to be derived therefrom.

2. In using Winthrop Hypaque 50 per cent radiopaque medium (hereinafter referred to as "Hypaque 50%") in repeated test procedures.

3. In using Hypaque 50% on the minor plaintiff at all because of said child's medical history and physical condition.

4. In using Hypaque 50% in excessive dosages.

5. In using Hypaque 50% in repeated injections during the same procedure.

6. In failing to use Hypaque 50% according to manufacturer's specifications and warnings.

7. In failing to apprise himself of the proper use, technique, precautions, dosages, dangers and contraindications of Hypaque 50% in procedures he used on the minor plaintiff and/or once having apprised himself thereof, in disregarding the same without sufficient justification.

8. In failing to employ any premedication to avoid or minimize allergic reactions in the child.

9. In failing to use Hypaque 50% at body temperatures.

10. In failing to use Hypaque 50% in a manner consistent with the standards of the informed medical community at the time on the basis of the foregoing.

It is alleged that defendant Coleman was negligent in his treatment of the minor plaintiff in each of the same ways as set forth above with respect to defendant Randolph. Defendant Coleman's liability is likewise predicated upon the fact that defendant Randolph was the agent, servant or employee of defendant Coleman.

Alternatively, it is alleged that defendant Coleman was negligent in abandoning the care of the minor plaintiff to other persons without the consent of the adult plaintiffs. Likewise, that defendant Coleman was negligent in failing to keep himself informed of the procedures, techniques, medicines, drugs, mediums and treatments and the risks thereof to be used on the minor plaintiff by said other persons and in failing to apprise the adult plaintiffs thereof.

### COUNT II—IMPROPERLY OBTAINED CONSENT

"Defendants Randolph and Coleman improperly obtained the consent of the adult plaintiffs for the performance of medical tests on their child by failing to advise them of the nature, manner, dangers, seriousness and contraindications of the procedures, equipment, drugs, medicines and testing mediums to be used. Defendant Coleman further represented to the adult plaintiffs that the tests to be made were no more risky than taking an aspirin. Both of said defendants likewise failed to inform the adult plaintiffs of the potential physical dangers to their child involved in the tests to be performed."

■ Before proceeding further, the court will consider the motion for a directed verdict filed by defendant Children's Hospital. Plaintiffs allege that defendant physicians acted as agents of the hospital. A hospital is liable for the acts of a physician only if he is employed by the hospital and/or acts as agent for the hospital. Garfield Memorial Hospital v. Marshall, 92 U.S.App.D.C. 234, 204 F.2d 721 (1953); Stivers v. George Washington University, 116 U.S.App.D. C. 29, 320 F.2d 751 (1963).

■■ It is clear that Dr. Coleman in no way could be construed as an agent of the hospital. He was a private pediatrician whose patient, the minor plaintiff, was in the hospital. Although Dr. Randolph, as Chief of Surgery, was in overall charge of patients who were admitted and who had no private physicians (so-called "staff cases") he also had private patients. The evidence in this case reflects that the minor plaintiff was such a private patient. Therefore, the defendant physicians were not agents of Children's Hospital and the doctrine of *Respondeat Superior* does not apply. Adams v. Boyce, 37 Cal. App.2d 541, 99 P.2d 1044, cert. denied, 311 U.S. 694, 61 S.Ct. 137, 85 L.Ed. 449 (1940); Mayers v. Litow, 154 Cal.App. 2d 413, 316 P.2d 351 (Calif.1957); Smith v. Duke University, 219 N.C. 628, 14 S.E.2d 643 (1941). When defendant physicians were treating minor plaintiff, they were exercising independent and individual professional skill and judgment. In *Smith, supra,* the court stated:

"The doctrine of *respondeat superior* does not apply to a physician who acts upon his own initiative, and in the exercise of his own judgment and skill, without direction or control of an employer, * * * and if there is negligence in the treatment of a patient on the part of a physician who is not the servant or employee of the hospital, and who is pursuing an independent calling, the responsibility is not that of the hospital, and there is

no distinction in that respect between a visiting and a resident physician."

■ Children's Hospital assumed the responsibility of carrying out the doctor's instructions and did not render treatment except pursuant to the doctor's orders. *See,* Hohenthal v. Smith, 72 App.D.C. 343, 114 F.2d 494 (1940).

For these reasons, the motion for a directed verdict proffered by defendant Children's Hospital is granted as to both counts of the complaint.

The court now turns to the motions of defendants Coleman and Randolph.

■ In order to establish a *prima facie* case of medical malpractice, the plaintiffs must produce some evidence that the defendants have violated the standard of care then existing in the community and that this departure was the proximate cause of injury to the minor plaintiff. Price v. Neyland, 115 U. S.App.D.C. 355, 320 F.2d 674 (1963); Kosberg v. Washington Hospital Center, 129 U.S.App.D.C. 322, 394 F.2d 947 (1968); Stottlemire v. Cawood, 213 F. Supp. 897 (D.D.C.1963).

■■ Looking first to plaintiffs' allegation of negligence in the performance of the operation, the court has not heard any evidence put forth by plaintiffs that would establish a standard of medical care applicable in the circumstances of this case. Plaintiffs rely on Monk v. Doctors Hospital, 131 U.S.App. D.C. 174, 403 F.2d 580 (1968) as support for the proposition that the medicine package inserts established the requisite standard of care. However, the inserts proffered for admittance into evidence were ruled inadmissible as irrelevant because these pamphlets did not address themselves to the type of operation performed on minor plaintiff. Indeed, the insert most heavily relied on by plaintiffs was not even in effect at the time of the operation. The single brochure which was allowed into evidence, although relevant in that it at least contained some information regarding the type of operation in ques-

tion, did not provide any insight into what might constitute the standard of care in these circumstances. Moreover, plaintiffs offered no expert medical testimony which might be probative of the standard of care except for the testimony of defendant physicians themselves, such testimony, of course, supporting defendants' conduct as being within the standard of care.

The court, therefore, grants defendant Randolph's motion for a directed verdict with regard to the allegation of negligence in the performance of the operation.

■ With regard to Dr. Coleman, the substance of plaintiffs' claims under this count is (1) that Dr. Randolph was the agent of Dr. Coleman, (2) that Dr. Coleman was negligent in allowing Dr. Randolph to treat minor plaintiff, and (3) that Dr. Coleman was negligent in failing to keep himself informed of medical techniques to be used on minor plaintiff and their accompanying risks. The agency allegation is moot because the court has already directed a verdict in favor of Dr. Randolph on this count of negligence in performance of the medical procedures employed. In addition, plaintiffs have put forth no evidence probative of the standard of care of a referring physician in these circumstances thereby necessitating pure speculation on the part of the jury regarding points (2) and (3) above. The court, therefore, directs a verdict in favor of Dr. Coleman on Count I of the complaint.

The court next turns to count II wherein the plaintiffs charge that defendant physicians were negligent in not fully advising the minor plaintiff's parents in order to enable the parents to give their informed consent to the operation. The substance of plaintiffs' evidence regarding this count is that the parents either jointly or separately spoke to each doctor on several occasions; that Dr. Coleman admitted no experience with the aortogram procedure but that he believed it should be no more

harmful than taking an aspirin; that they knew Dr. Randolph was Chief of Surgery at the hospital; that he was highly regarded; and that he would be personally conducting the operation on the child; that Dr. Randolph explained the operation and the accompanying effects and risks with the exception of the risk of paralysis; that the reason Dr. Randolph did not explain the risk of paralysis was because there was no known or recorded instance of a child under nine years of age who became paralyzed as a result of an aortogram; that the doctors and parents believed the child to be in a "life-threatening condition;" and that the father of the child gave his written consent to the performance of the operation.

■ Although there is little law in the District of Columbia that directly applies to these issues, cases from other jurisdictions, treatises, and common-law tort and malpractice principles lead this court to the conclusion that to succeed on this count at this stage of the proceedings, the plaintiffs must produce some evidence as to *each* of the following five elements. Plaintiffs must show:

1. By expert medical evidence that which a reasonable medical practitioner practicing in the same or similar communities, under the same or similar circumstances, would have disclosed to the patient's parents about the reasonably foreseeable risks incident to the proposed diagnosis or treatment; and

2. That the physician departed from this standard by not disclosing this information to the patient's parents; and

3. That had all the reasonably foreseeable risks been disclosed to the patient's parents, as well as the risks of failing to proceed with the proposed operation, that the patient's parents would *not* have consented to the proposed diagnosis or treatment; and

4. That because the diagnosis or treatment proceeded without the in-

formed consent of the patient's parents, that the patient was injured thereby; and

5. That the injury to the patient is measurably greater than the injury that would have occurred if the patient's parents had been fully informed and had chosen to prevent the treatment or diagnosis by refusing to consent.

Green v. Hussey, 127 Ill.App.2d 174, 262 N.E.2d 156 (1970); Mallett v. Pirkey, 466 P.2d 466 (Colo.1970); Williams v. Menehan, 191 Kan. 6, 379 P.2d 292 (1965); Shetter v. Rochelle, 2 Ariz.App. 358, 409 P.2d 74 (Ariz.1965); Aiken v. Clary, 396 S.W.2d 668 (Mo.1965); Roberts v. Young, 369 Mich. 133, 119 N.W. 2d 627 (1963); Wilson v. Scott, 412 S. W.2d 299 (Tex.1967); 2 Louisell & Williams, Medical Malpractice, para. 22.01–.09.

██ With regard to Dr. Randolph, there has been no expert medical evidence or any other evidence put forward by the plaintiffs that his omission of reference to the risk of paraplegia when such risk had never been encountered in a child minor plaintiff's age was a deviation from the standard of care vis-a-vis informed consent.

In addition, plaintiffs' attorney admits that there was no evidence that the parents would not have given their consent even if they had been told of a possible risk of paralysis. Thus, the court directs a verdict in favor of Dr. Randolph on count II.

██ With regard to Dr. Coleman, even though there was substantial testimony to the contrary, at this stage the court must only look to the parents' testimony that Dr. Coleman represented that the operation was no more harmful than taking an aspirin. However, again the court has seen no evidence of a standard of care relating to a referring physician. Although laymen should not be expected to know the parameters of expertise characteristic of the various disciplines of the medical profession, the parents knew Dr. Coleman was a pediatrician, knew he had no knowledge or expertise with aortograms, knew that Dr. Randolph was the Chief of Surgery and knew he would be operating on the child. Thus, if there was a difference between the information provided by Dr. Coleman and that provided by Dr. Randolph, it is inconceivable that a reasonable juror could possibly find that the parents relied on Dr. Coleman's statements instead of Dr. Randolph's representations.

However, even if plaintiffs had established a standard of care for a referring pediatrician and even if plaintiffs had demonstrated that Dr. Coleman deviated from that standard, again there is no evidence that the parents would have stopped the operation had Dr. Coleman told them everything they now allege he should have told them. The court, therefore, directs a verdict in favor of Dr. Coleman with regard to count II.

In summary, the court directs a verdict in favor of all defendants on both counts of the complaint. Judgment for the defendants will be entered accordingly.

So ordered.