**Alice B. TAMS, Appellant,**

**v.**

**Herbert L. KOTZ, M.D., Appellee.**

**No. 83–1061.**

District of Columbia Court of Appeals.

Argued May 2, 1985.

Decided Sept. 17, 1987.

William A. Mann, with whom Darrel L. Longest, Rockville, Md., was on the brief, for appellant.

Steven A. Hamilton, with whom William F. Causey, Rockville, Md., was on the brief, for appellee.

Before BELSON and TERRY, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge:

This is an appeal from a judgment in favor of Dr. Kotz, a surgeon sued by a patient operated upon for intestinal cancer, who had to undergo surgery again to remove a foreign object inadvertently left inside the abdominal wall when such operation was completed. At the second operation, the surgeon discovered a laparotomy pad[1] which had adhered to some intestinal membrane. Its extraction also required removing a damaged segment of the intestine.

On the premise that someone had blundered, the patient (appellant here) brought an action for negligence against the surgeon (an independent practitioner) and Georgetown University Hospital, which had supplied not only the operating room but a technical staff of radiologists and nurses to assist the surgeon. The case was tried for almost three weeks before a jury. After all three parties had presented testimony, including that of expert witnesses, the hospital decided to settle out of court. Appellant accepted its offer of compensation and dismissed her action against the hospital. Thus, when the jury considered the matter, the surgeon was the sole defendant. The jury returned a special verdict on interrogatories submitted to it which found neither the surgeon nor the nurses on duty for the operation had acted negligently.

The trial court denied a post-trial motion for judgment n.o.v. or for a new trial. Appellant assigns as error the denial of such motion and also claims error in a directed verdict for the defendant on the issue of negligent conduct subsequent to the operation. We find no error in either ruling and affirm.

In order to clarify the two issues on appeal, we summarize briefly the evidence developed at the lengthy trial.

Prior to the first operation, appellant was diagnosed as suffering from a cancerous tumor located between the bladder and vaginal wall. When radiation treatments failed to remedy the malignancy, it was decided after consultation with different physicians that surgery was in order. Such surgery, undertaken by Dr. Kotz on May 11, 1981, lasted about five hours. It required not only extensive incision of the abdomen, but the implantation of radioactive particles. In performing the operation, Dr. Kotz was aided by Georgetown Hospital personnel including two staff radiologists, one of whom, Dr. Brereton, implanted the radioactive material.

In the course of the operation, more than 400 items, consisting of surgical implements, instruments, suturing needles, sponges and lap pads were utilized. Under standard procedure prescribed by the hospital, the sponge and circulating nurses record the number of such articles as they are handed to the doctors or placed inside the patient, and make a corresponding count—"the sponge count"—as they are returned. The purpose of these counts is to make sure that no object is unintentionally allowed to remain inside the body of a patient. There was testimony at the trial that Dr. Kotz made a visual and manual examination of the intestines and other internal organs of appellant and ascertained from the attendant nurses that their counts had tallied and were correct before closing the abdominal incision.

Four days later, Dr. Brereton—the staff radiologist—ordered an X-ray examination of appellant's abdomen to make sure that there was no blockage from the radioactive particles. A copy of the X-ray report, dated May 15, was forwarded to Dr. Kotz by the hospital. Appellant was discharged

---

1. In oral argument, such pads were described as thin fabrics with an absorbent quality used in modern surgery as ancillary sponges. These articles are tallied as separate items by the operating team in the "sponge count."

from the hospital two weeks after the operation.

A month later, however, she reported to the emergency room complaining of abdominal pain.[2] As another X-ray examination indicated some foreign object in the abdomen, the surgeon resorted to the second operation.

The subsequent action for damages against Dr. Kotz alleged that he was negligent in (1) completing the first operation without detecting that a pad still remained in the patient's body, (2) failing to read the X-ray report ordered by Dr. Brereton which would have put him on notice earlier of the presence of a foreign object in the abdomen, and (3) utilizing a surgical procedure designed to shrink, rather than to cut out, the malignant tumor. The jury verdict found against the plaintiff on this third allegation. No appeal was taken with respect to this aspect of the case.

On the second allegation in the complaint, the court at a bench conference on proposed instructions, announced that it would direct a verdict for the defendant on this issue. Appellant has excepted to this ruling. It is argued that if Dr. Kotz had read the X-ray report of May 15th, a copy of which was posted to him, he would have observed that the text indicated the presence of a drain in the abdomen. As no drain had been inserted, so the argument goes, the surgeon would have inferred that something requiring immediate emergency surgery had occurred. Had the abdomen been promptly reopened, under appellant's theory, the abscessing and removal of a portion of the small intestine could have been averted.[3]

2. Appellant was in the hospital June 10 through 12, 1981, for blood transfusions.

3. This theory is somewhat tenuous, for it is by no means clear that the patient's post-operative condition was such that a new incision would have been prudent. She did not recuperate sufficiently for discharge until May 26th and then had to return for blood transfusions shortly thereafter.

4. Dr. Kotz admitted receiving the report but testified that he did not read it. He explained that he relied upon two notes in appellant's hospital chart: one from Dr. Brereton, who ordered the X-ray and who was a radiologist

It is well established that to demonstrate medical malpractice, a plaintiff must prove (1) the applicable standard of care, (2) a deviation therefrom, and (3) a causal relationship between the deviation and the injury complained of. *Meek v. Shepard,* 484 A.2d 579, 581 (D.C.1984).

Appellant recognizes this principle. In urging reversal of the challenged ruling, appellant points to the testimony of her expert witness, Dr. Murdock, to the effect that: (1) Dr. Kotz had a duty to read the X-ray report; (2) Dr. Kotz testified that he did not read it;[4] and (3) one notation in such report revealed the possibility of something foreign in the abdomen. Accordingly, appellant contends that the trial court did not interpret the evidence in the light most favorable to her.[5]

Such argument would carry some force were it not for a concession made by appellant's own expert which faulted not Dr. Kotz, but the radiologist who prepared the report after examining the X-ray plate. The report, received into evidence as an exhibit, notes in the first paragraph to the film's showing "... a drain projects over the left midabdomen," and went on to observe "... the remainder of the film was unremarkable." This was followed by a description of the post-operative condition of the kidneys, bladder, ureter, and connecting glands. The concluding paragraph, marked "Impressions," and typed in capital letters, draws attention only to the description of a "slight mucosal irregularity" in the contour of the bladder. It contains no reference to the presence of any drain.

According to the witness, this omission was significant. He remarked:

and a radiation therapist, and one from the hospital radiologist, both of which reported that the X-ray was normal.

5. On motion for a directed verdict, the trial judge must view the evidence in the light most favorable to the party against whom the verdict is sought with all reasonable inferences drawn in the non-moving party's favor. *Gabrou v. May Department Stores Co.,* 462 A.2d 1102, 1104 (D.C.1983). A verdict may be directed, then, only when the evidence is so clear that reasonable men could reach but one conclusion. *Diamond Services Co. v. Utica Mutual Insurance Co.,* 476 A.2d 648 (D.C.1984).

Well, if you read the impression of his [staff radiologist] report there is no mention in there of a foreign body or drain, although there is mention of a drain at the very beginning, in the descriptive part of the report, but there is nothing in the impression part of the report. So that it is up to the radiologist to somehow make it known to the physicians involved in this case—the critical physicians involved in this case that there is either a drain or a foreign body, and he can do that by written format, which is the report itself, or verbally. As far as the written format is concerned in the impression section there is no mention of a potential foreign body, drain or whatever on the X-ray.

In discussing Dr. Kotz's duty to read the report, Dr. Murdock stated on cross-examination: "[T]he key part of the report is the *impressions* because anything of significance would be in the impressions...." (Emphasis supplied.)[6]

Appellant's brief fails to mention, however, this damaging concession by her expert witness. No mention of the possibility of a drain appears in the "impressions" section of the report, which according to Dr. Murdock, is where a physician would ordinarily look to obtain the thrust of any X-ray study.

The observant trial judge, however, was aware of this aspect of the record. In explaining to counsel during a bench colloquy his reasons for proposing to instruct the jury that there was no evidence that Dr. Kotz was negligent in failing to read the report, he summarized the notes he had taken while Dr. Murdock was testifying, and said:

Plaintiff could have come right back on redirect and said, Doctor, you have testified that Dr. Kotz should have reviewed [the report]. Had he reviewed it, would he have read the whole thing and seen it in that portion? He should have seen it in that portion, Dr. Murdock could have said, and his failure to do so or his failure to review it was a violation of the standard of care.

But as Dr. Murdock had effectively limited the surgeon's duty in studying the report only to reading the impressions section, it became obvious that even if Dr. Kotz had read that portion, he would still have remained unaware that the X-ray plate disclosed the possibility of a foreign object in the patient's body. Thus, his failure to read the "impressions" was not the cause of the aggravation of intestinal damage. Hence, the challenged ruling of the trial court cannot be held erroneous.

■ Appellant also argues strongly that the court erred in not setting aside the verdict of the jury and granting a motion for new trial, contending that the jury's finding that neither Dr. Kotz nor the nurses were negligent should not be permitted to stand as "all witnesses agreed that there was a breach of the standard of care."

It can scarcely be argued, however, that there was not ample evidence to support the conclusion that the surgeon was not culpable in failing to detect the lap pad in the intestines before letting the patient leave the operating table. To be sure, Dr. Murdock, appellant's expert, did begin his testimony by stating his opinion that Dr. Kotz's performance during the operation fell below the standard of care expected of a surgeon in this city. But by the conclusion of cross-examination, the witness had qualified that statement in significant respects. The following excerpts from his testimony are illustrative:

Q. So under the facts in this case, your testimony is that the standard of care required a visual examination of the abdomen, is that so?

A. You can't visualize the abdomen....

\* \* \* \* \* \*

You can see part of the abdomen ... [but] no matter how much you move the intestine and push it to the side, there are always areas you can't visualize. So you would look at it as much as you possibly could, and then you might even palpate it as best you possibly could.

Q. ... There is no way that a surgeon, while he is involved in a six hour procedure, can keep track of all of the sponges

6. The term "impressions" is the caption preceding the final paragraph of the text of the radiologist's report. It is apparently a synonym for "summary."

that are used or in the operatory, for that matter?

A. That's correct.

Q. And in effect the surgeon must rely upon the count as provided to him by the scrub nurse and/or circulating room nurses, am I correct?

A. He heavily relies upon it.

\* \* \* \* \* \*

Q. ... And if a surgeon obtains an accurate result of the sponge count on two or three occasions, he has explored to the extent one can, the abdomen, there is no more that he can do at that particular point in time, am I correct, in terms of being in compliance with the standard of care?

A. If he feels comfortable with his staff, and if he feels that everything was going along smoothly and instinctively felt that everything had been removed, he would—that is about all he can do unless he feels like going ahead and getting an X-ray.

Q. And we have already discussed that the standards of care do not require an X-ray, am I correct?

A. The minimal standards of care do not require an X-ray.

On the most critical issue, he finally testified:

Q. Isn't it a fact, doctor, that Dr. Kotz personally, personally did not depart from standards of care as far as what he specifically did during the course of the operative procedure? I'm not talking about the results, I'm talking about what he did.

A. Well, the two are sort of entertwined [sic] but if I can separate the two. *It appears, at least from the records, that*

*he went through the various steps that are usually taken in order to be sure that a sponge or foreign body or an instrument was not left in the abdomen.*[7]

Q. Dr. Kotz did what he was supposed to do, but notwithstanding that a lap sponge was left, am I correct? Do you agree with that statement?

A. I would agree with the statement not having been there and having felt the flow of the case.

(Emphasis added.)

In short, the testimony of appellant's expert conceded that if a surgeon, after examining the cavity resulting from an incision, relies upon assurances by the nursing staff that the sponge count is correct, he is not chargeable with any breach of duty, if he then undertakes the final suturing process to close the incision. As this was precisely what the defendant in this case did, the court did not err in rejecting the motion to set aside the jury finding that the surgeon's own conduct met the standard of care.[8]

 What appellant focuses upon as error is the asserted inconsistency of the jury in also absolving the nursing team from negligent conduct, when it returned its special verdict. As the hospital's mimeographed instruction on operating room procedures prescribed the way items should be counted and the steps to be taken in the event of an incorrect count, there is no doubt that the nursing staff was charged with heavy responsibilities. Hence, appellant argues that if the surgeon was not to blame for the mishap in the operating room, it follows that the nursing staff must have been careless.

Plausible as this contention is, it seems to ignore the posture of the case when the

---

**7.** An exhibit introduced by appellant and received as evidence included a report signed by the surgeon, prepared immediately after the operation. The detailed description of the procedure includes the sentence: "Sponge and instrument counts were reported to be correct."

**8.** Dr. Neil Rosenshein, an expert witness called by Dr. Kotz was explicit on this point:

Q. [A surgeon's] failure to remove a laparotomy pad from the patient at the close of surgical procedure would fall below the standard of care; would it not?

A. I think, if a surgeon has followed good surgical practice, looked in the abdomen and received three correct sponge counts, he has fulfilled his obligation in that particular setting.... I think a surgeon does, indeed, have a responsibility. And that responsibility was discharged in this particular case, Mrs. Tams' case, by his [Dr. Kotz] exploration of the abdomen and receiving three correct sponge counts before he left the operating room.

issue was submitted to the jury. By that time, the hospital, having reached a settlement with the appellant, was no longer a defendant. None of the nurses who participated in the operation had been sued individually. Hence, the principle of *res ipsa loquitur* could not be invoked, for the question of negligence on the part of the nurses was then pertinent only if the jury found them to be "borrowed servants" of the only remaining defendant, the surgeon. Earlier, while the hospital was still a defendant, its counsel tried to prove this by eliciting testimony from the chief nurse, a Mrs. Munroe, to the effect that although the nurses were on the hospital payroll, they were required to comply with the surgeon's orders once they entered the operating room, including orders that, as counsel put it, might conflict with usual procedures. The witness thereafter testified at great length upon the diligence with which she and her assistants—the scrub and circulating nurses—collaborated in keeping an accurate count of the items handed to the surgeon and later removed and discarded. At no point did she indicate that any particular order or direction of the surgeon interfered with this procedure, and therefore might have caused a miscount. Her testimony was that in making the sponge count, the nurses followed specific policy adopted by the hospital. She also testified that when she was relieved shortly before the operation ended, she reviewed the tally made by the relief supervisor and found it accurate. Thus, there was no evidence that in carrying out their accounting responsibilities, the nurses, in their roles as "servants of the doctor," *i.e.*, in complying with any directions of his which conflicted with their normal procedure, engaged in conduct for which he could be deemed liable. In fact, appellant's brief concedes that there was evidence which could have supported a jury verdict that the operating room nurses "were not the servants of the doctor." [9]

Although the trial court submitted a special interrogatory on the issue of whether the nurses were "borrowed servants" of the surgeon, the jury never reached this issue in view of its finding of no negligence on the part of the nursing staff. It is not altogether clear from the record as to why the jury should have considered this broader question in view of the fact that it no longer had to pass upon the alleged liability of the hospital. But, in any event, the jury's conclusion on this point exonerated Dr. Kotz from liability. *See Stiners v. George Washington University,* 116 U.S. App.D.C. 29, 31–32, 320 F.2d 751, 753–54 (1963).

The record also demonstrates that the jury finding clearing the nursing staff of negligence was not lacking in evidentiary support. The testimony of Mrs. Munroe, if believed, showed that she and her colleagues were meticulous in conforming to all the precautionary procedures set forth in the hospital manuals. Dr. Cavanaugh, also a witness for the hospital, testified that in his opinion the performance of the nurses did not fall below the standard of care.

Although appellant points to testimony by other expert witnesses which could have caused the jury to find that the hospital staff was derelict in its performance, it is for a jury to make its own independent evaluation of the evidence, including the binding nature of an expert's testimony. *Rock Creek Plaza-Woodner Limited Partnership v. District of Columbia,* 466 A.2d 857, 859 (D.C.1983); *Mann v. Robert C. Marshall, Ltd.,* 227 A.2d 769, 771 (D.C. 1967). It was within the province of the jury, when faced with conflicting evidence concerning reasonable conduct during the operation, to reach the conclusion that it did. Accordingly, we disagree with appellant's contention that in this case there was but one reasonable conclusion for the jury to make in rendering its verdict. We discern no error in the trial court's denial of motions for a new trial or judgment n.o.v. *See Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979).

*Affirmed.*

9. As the issue of possible carelessness on the part of the nurses was relevant only to the vicarious liability of the surgeon by the time the case went to the jury, such concession appears to make appellant's main objection to the jury verdict immaterial.